United States District Court
District of Massachusetts

```
——————————————————————————  )
Malden Transportation, Inc. et  )
al.,                            )
                                )
          Plaintiffs,           )
                                )   Civil Action No.
          v.                    )   16-12538-NMG
                                )
Uber Technologies, Inc.,        )
                                )
          Defendant.            )
——————————————————————————  )
                                )
Anoush Cab, Inc. et al.,        )
                                )
          Plaintiffs,           )
                                )
          v.                    )   Civil Action No.
                                )   17-10142-NMG
Uber Technologies, Inc.,        )
                                )
          Defendant.            )
——————————————————————————  )
                                )
Dot Ave Cab, Inc. et al.,       )
                                )
          Plaintiffs,           )
                                )
          v.                    )   Civil Action No.
                                )   17-10180-NMG
Uber Technologies, Inc.,        )
                                )
          Defendant.            )
——————————————————————————  )
Max Luc Taxi, Inc. et al.,      )
                                )
          Plaintiffs,           )
                                )
          v.                    )
                                )   Civil Action No.
Uber Technologies, Inc.,        )   17-10316-NMG
                                )
          Defendant.            )
——————————————————————————  )
```

-1-

```
_____
                               )
Gill & Gill, Inc. et al.,      )
                               )
        Plaintiffs,            )
                               )
        v.                     )    Civil Action No.
                               )    16-12651-NMG
Uber Technologies, Inc. et al, )
                               )
        Defendant.             )
_____  )
                               )
Sycoone Taxi, Inc. et al.,     )
                               )
        Plaintiffs,            )
                               )
        v.                     )    Civil Action No.
                               )    17-10586-NMG
Uber Technologies, Inc.,       )
                               )
        Defendant.             )
_____  )
                               )
Taxi Maintenance, Inc. et al., )
                               )
        Plaintiffs,            )
                               )
        v.                     )    Civil Action No.
                               )    17-10598-NMG
Uber Technologies, Inc., Travis )
Kalanick, and Garrett Camp,    )
                               )
        Defendants.            )
_____
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves seven consolidated actions by various taxi medallion holders in the Greater Boston area ("plaintiffs") who allege that Uber Technologies, Inc. ("Uber" or "defendant") and two of its founders, Travis Kalanick and Garrett Camp (the "individual defendants") competed unlawfully in the on-demand,

-2-

ride-hail ground transportation market in and around Boston, Massachusetts.  Plaintiffs in all seven actions allege that Uber competed unfairly in violation of the common law and the Massachusetts Consumer Protection Act.  Certain plaintiffs also allege that Uber violated state and federal antitrust law, interfered with advantageous business relationships, engaged in a civil conspiracy and aided and abetted unfair competition.

Before the Court are 1) a motion to dismiss of individual defendants Travis Kalanick and Garrett Camp (Docket No. 70) and 2) defendants' consolidated motion to dismiss plaintiffs' complaints (Docket No. 72).

## I. Background

The City of Boston has traditionally regulated taxis under a set of municipal rules, ordinances and regulations collectively known as "Taxi Rules".  The Police Commissioner for the City of Boston ("the Commissioner") is authorized by statute to regulate all vehicles that fall under those rules.  Boston Police Department Rule 403 ("Rule 403") requires that

> [i]n the City of Boston, no person, firm, or corporation driving or having charge of a taxicab or other private vehicle shall offer the vehicle for hire for the purpose of transporting, soliciting and/or picking up a passenger or passengers unless said person is licensed as a hackney driver and said vehicle is licensed as a hackney carriage by the Police Commissioner.

City of Boston Code 16-15.05: Vehicle for Hire Ordinance (Appendix I to Rule 403).

-3-

Rule 403 applies to all vehicles "used or designed to be used for the conveyance of persons for hire from place to place" within the city of Boston.[1]  The Taxi Rules impose certain regulations on taxi cabs, such as requiring possession of a taxi medallion, maintaining a properly equipped taxicab and belonging to an approved dispatch service or radio association.

Uber entered the Boston market for private transportation services in 2011 and launched its UberX service in 2013.  The company provides a digital tool for requesting private vehicles-for-hire by users who download Uber's free "smart phone application" ("the Uber app"). Users who open the Uber app on their mobile phones are shown a map of their location or designated pick-up point and the available Uber-affiliated vehicles in that vicinity.

In August, 2016, Massachusetts enacted the Transportation Network Companies Act ("the TNC Act"). See M.G.L. c. 159A ½. The statute defines a TNC as an "entity that uses a digital network to connect riders to drivers to pre-arrange and provide transportation." M.G.L. c. 159A ½ § 1.  The law preempts municipalities from regulating TNCs through local Taxi Rules. M.G.L. c. 159A ½ § 10 ("[N]o municipality or other local or

---

[1] Plaintiffs note that Taxi Rules vary among municipalities but do not identify any specific differences.

-4-

state entity, . . . may subject a [TNC]" to requirements besides
the Massachusetts Department of Public Utilities and the
Massachusetts Port Authority.).

In the "Taxi Maintenance" action plaintiffs assert claims
against Travis Kalanick, Uber's co-founder and former CEO, and
Garrett Camp, an Uber co-founder and a current director.  The
complaint names both individuals as defendants.

The present litigation involves seven different groups of
plaintiffs that represent over 700 holders of taxi medallions in
the Greater Boston area.  The various complaints were filed in
this district between December, 2016, and April, 2017.  The
Court consolidated the cases pursuant to Fed. R. Civ. P.
42(a)(2) on October 5, 2017.  On November 13, 2017, this Court
entered an order explaining in detail how the cases were to
proceed consistent with judicial economy and due process for all
parties.

Before the Court are two omnibus motions to dismiss filed
by defendants: one with respect to Uber and the other with
respect to the individual defendants.

## II. Analysis

### A.   The Motion to Dismiss of Defendants Travis Kalanick and Garrett Camp

Only the Taxi Maintenance plaintiffs pursue a claim against
the individual defendants.  Accordingly, defendants' motion to

dismiss is directed only at the Taxi Maintenance Corrected Amended Complaint.

## **Personal Jurisdiction**

On a motion to dismiss for want of personal jurisdiction, plaintiff bears the burden of showing that the Court has authority to exercise jurisdiction over defendants. See Mass. Sch. of Law at Andover, Inc. v. ABA, 142 F.3d 26, 33-34 (1st Cir. 1998).  The Court must take facts alleged by plaintiff as true and construe disputed facts favorably toward plaintiff. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).  As such, this Court must determine whether (1) jurisdiction is permitted by the Massachusetts long-arm statute and (2) the exercise of jurisdiction coheres with the Due Process Clause of the United States Constitution. Id.

The Massachusetts long-arm statute, M.G.L. c. 223A, § 3, extends jurisdiction to the limits of the United States Constitution. See Tatro v. Manor Care, Inc., 416 Mass. 763, 771 (1994).  Accordingly, this Court need not further consider the statute's applicability and may proceed to the due process

question.  See Daynard v. Ness, Motley, Loadholt, Richardson &
Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

Due process demands a showing of general or specific
personal jurisdiction by plaintiff.  See Negron-Torres v. Verizon
Commc'n, Inc., 478 F.3d 19, 24 (1st Cir. 2007).  Plaintiffs must
demonstrate that defendants have made sufficient contacts with
the forum state to justify the exercise of that jurisdiction.
Id.

**1.  General Jurisdiction**

This Court may assert general jurisdiction over a defendant
who maintains continuous and systematic activity in the forum
state.  See United Elec., Radio and Mach. Workers of Am. v. 163
Pleasant St., 960 F.2d 1080, 1088 (1st Cir. 1992).  General
jurisdiction is only appropriate where the defendant's activity
renders him "essentially at home in the forum state".  Goodyear
Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919
(2011).

The Taxi Maintenance complaint states, in conclusory
fashion, that the individual defendants are subject to general
personal jurisdiction within the Commonwealth of Massachusetts
by "regularly engaging in persistent courses of conduct in the
Commonwealth of Massachusetts" through the Uber ride-hailing
service.  Plaintiffs fail, however, to allege specific facts

demonstrating that the individual defendants, as opposed to the corporate defendant with which they are associated, should be considered "at home" in Massachusetts. See id.  The plaintiffs' threadbare statement is insufficient to establish this Court's general jurisdiction.

### 2. Specific Jurisdiction

The Due Process Clause of the Fourteenth Amendment requires that a defendant have "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The plaintiff must allege that (1) the claim underlying the litigation arises directly out of, or relates to the defendant's forum-state activities, (2) the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state and (3) the exercise of jurisdiction is reasonable. Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995) (citing United Electrical Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)).

"The relatedness requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 714 (1st Cir.

1996) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994)) (internal quotation omitted). Personal jurisdiction over an employee does not follow from the fact jurisdiction over the employer exists. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n. 13 (1984).  Instead, there must be "an independent basis for jurisdiction based on an individual's actions." Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc., 901 F. Supp. 2d 255, 263 (D. Mass. 2012) (citations omitted).

Plaintiffs fail to allege facts that demonstrate a nexus between the individual defendants' contacts and the plaintiff's cause of action.

No specific facts with regard to Camp are alleged beyond the claim that he founded (and is a director of) Uber and that he resides in California.  Plaintiffs attempt to attribute the acts of Uber to Camp through principles of agency law.  They fail to allege, however, a single fact indicating that Camp made decisions about Uber's operations in Massachusetts or even traveled to the Commonwealth.  Accordingly, plaintiffs have failed to allege that this Court has specific personal jurisdiction over Garrett Camp. Cf. Galletly v. Coventry Healthcare, Inc., 956 F. Supp. 2d 310, 314 (D. Mass. 2013) (finding that court lacked jurisdiction over individual

defendant because plaintiff's allegations "[did] not suggest that [defendant] played any specific role" in the underlying cause of action).

The handful of statements that plaintiffs attribute to Kalanick do not create a nexus to their cause of action. Plaintiffs provide a smattering of irrelevant comments made by Kalanick, such as that he is a fan of Ayn Rand's novel "Fountainhead" (sic).  They do not, however, point to a single decision Kalanick made about Uber's operations in Massachusetts. They do not allege that Kalanick traveled to the Commonwealth regularly, or even at all.  Plaintiffs have failed to allege that this Court has specific personal jurisdiction over Travis Kalanick. Cf. Interface Grp.-Massachusetts, LLC v. Rosen, 256 F. Supp. 2d 103, 107 (D. Mass. 2003) (determining that Court lacked specific personal jurisdiction because there was "too tenuous a nexus" between the defendant's specific Massachusetts contacts and the injuries suffered by the plaintiff).

Because plaintiffs have failed to establish the relatedness requirement of specific personal jurisdiction, the Court declines to address the foreseeability and reasonableness requirements.

### 3.    Piercing the corporate veil

As an alternative, plaintiffs contend that they have established specific personal jurisdiction over the individual defendants on the basis of an alter ego theory.  That theory is inapposite.  Under Massachusetts law, courts consider a multitude of factors when deciding whether to pierce a corporate veil:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 555 n. 19 (2000) (citing Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 14-16 (1st Cir. 1985)).

The complaint does not allege facts in support of a single factor relevant to piercing the corporate veil.  Accordingly, plaintiffs have not justified the application of such a theory. See Newman v. European Aeronautic Defence & Space Co. Eads N.V., 700 F. Supp. 2d 156, 168 (D. Mass. 2010).

Plaintiffs have failed to establish that this Court has personal jurisdiction over either of the individual defendants. Therefore, the motions to dismiss of defendants Travis Kalanick and Garrett Camp will be allowed.

### B.   The Consolidated Motion to Dismiss of Defendants Uber, Travis Kalanick and Garrett Camp

Defendants contend that plaintiffs fail to state a claim upon which relief can be granted.  In summary, Uber avers that it has not been shown: 1) to compete "unfairly" because it was never subject to the Taxi Rules, 2) to present a dangerous probability of monopolizing a market, 3) to interfere with advantageous business relationships or with the market-at-large, or 4) to have been part of a conspiracy or to have aided and abetted the violation of any legal canon.  The Court will address these contentions seriatim.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F.Supp.2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the

facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F.Supp.2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Threadbare recitals of the legal elements which are supported by mere conclusory statements do not suffice to state a cause of action. Id. Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

### 1.  Unfair competition under the common law and the Massachusetts Consumer Protection Act, M.G.L. c. 93A § 11

All seven groups of plaintiffs bring claims of unfair competition under the common law and Massachusetts statutory law.[2]

Plaintiffs theory, in its simplest form, is that the taxi industry in Greater Boston area is a heavily regulated business. Taxi cabs must, for instance, obtain a license, known as a "taxi medallion", to operate lawfully.  Uber, the plaintiffs insist,

---

[2] The plaintiffs do not distinguish between the legal standard for their common law and statutory claims.

did not comply with the Taxi Rules, did not incur the concomitant costs, and thereby gained an unfair advantage and caused economic injury to taxi medallion holders and duly licensed fleet owners.

Uber responds that it is not and has never been subject to the Taxi Rules.  Uber submits that the rules have never been enforced against it and furthermore that the Commonwealth of Massachusetts has recently enacted a statute that preempts municipalities from regulating Uber (referring to M.G.L. c. 159A ½, § 10).  According to defendants, the TNC Act thus reaffirms that the Taxi Rules do not apply (and never have applied) to Uber.

Chapter 93A makes it unlawful for a party to engage in an "unfair method of competition" or an "unfair or deceptive act or practice." M.G.L. c. 93A, § 11. Proponents of such claims must prove they have suffered a tangible loss as a result of the unfair or deceptive conduct. Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 56 (1st Cir. 1998).

To determine whether a particular practice is unfair, courts examine

> Whether the practice . . . is within at least the penumbra of some common-law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers . . . .

<u>Mass. Eye & Ear Infirmary</u> v. <u>QLT Phototherapeutics, Inc.</u>, 552 F.3d 47, 69 (1st Cir. 2009).

The lodestar of Chapter 93A claims is whether the defendant's actions "would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." <u>Levings</u> v. <u>Forbes & Wallace, Inc.</u>, 8 Mass. App. Ct. 498, 504 (1979) (Kass, J.).

Although claims under Chapter 93A are uniformly included with allegations of statutory and common law violations, "[v]iolation of a statutory regime is not a necessary basis" for them to proceed. <u>Morris</u> v. <u>BAC Home Loans Servicing, L.P.</u>, 775 F.Supp.2d 255, 259 (D. Mass. 2011); <u>see</u> <u>also</u> <u>Mass. Eye & Ear Infirmary</u>, 552 F.3d at 66 ("To prove [a Chapter 93A] claim, it is neither necessary nor sufficient that a particular act or practice violate common or statutory law."); <u>cf.</u> <u>Madan</u> v. <u>Royal Indem. Co.</u>, 26 Mass. App. Ct. 756, 763 (1989) (explaining that a plaintiff must show unfair or deceptive acts over and above a breach of contract to demonstrate a violation of Chapter 93A).

As noted above, the TNC Act authorizes the operations of Uber and preempts municipalities from regulating TNCs. Indeed, plaintiffs concede that, after enactment of the statute in August, 2016, Uber can not, as a matter of law, violate the Taxi Rules. Accordingly, the activity in dispute in this action is limited to that which took place prior to August 5, 2016.

### i.   Competing as an unlicensed participant in a licensed market can constitute an unfair trade practice

Determining the boundaries of actionable conduct under Chapter 93A is a question of law. Incase Inc. v. Timex Corp., 488 F.3d 46, 56 (1st Cir. 2007) (citation omitted).  Whether a particular set of acts is unfair or deceptive is a question of fact. Id.

Taking the plaintiffs' plausibly alleged facts as true and construing disputed acts in their favor, plaintiffs have stated a claim that Uber engaged in an unfair method of competition by operating its services outside of the purview of Massachusetts and local law.  Massachusetts courts have consistently allowed "a licensed carrier of passengers [to] restrain competition by an unlicensed carrier." A. B. & C. Motor Transp. Co. v. Dep't of Pub. Utilities, 327 Mass. 550, 551 (1951) (collecting cases). This Court has already allowed claims similar to plaintiffs' to survive a motion to dismiss against this same defendant. See Boston Cab Dispatch, Inc. v. Uber Techs., Inc., 2014 WL 1338148, at *6-7 (D. Mass. Mar. 27, 2014) (holding that plaintiffs stated a claim for unfair competition pursuant to Chapter 93A and the common law where defendant allegedly operated service without incurring expense of local and state regulation).

Whether Uber's conduct in this particular instance was sufficiently egregious will require "an individualized, fact-

-16-

specific inquiry". <u>Woods</u> v. <u>Wells Fargo Bank, N.A.</u>, 733 F.3d 349, 358 (1st Cir. 2013) (citing <u>Arthur D. Little</u>, 147 F.3d at 55) (internal quotation omitted).  At this stage, however, plaintiffs have plausibly stated a claim that Uber's conduct amounted to more than a statutory violation or tort. <u>See</u> <u>Juarez</u> v. <u>Select Portfolio Servicing, Inc.</u>, 708 F.3d 269, 281 (1st Cir. 2013).

**ii.   The Regulatory Framework**

Uber vigorously rejoins that it "is not, and was not, subject to Taxi Rules."  Accordingly, it submits, it cannot be said to compete unfairly for failure to follow inapplicable rules.  The Court disagrees.

The Massachusetts legislature authorized the Commissioner to regulate the taxi business in Boston. <u>Town Taxi Inc.</u> v. <u>Police Com'r of Boston</u>, 377 Mass. 576, 578 (1979).  The Commonwealth has issued regulations regarding vehicle registration requirements.  Those regulations define a "Taxicab" as

> any vehicle which carries passengers for hire, and which is
> licensed by a municipality pursuant to M.G.L. c. 40, § 22
> as a taxicab.

540 Code Mass. Regs. 2.05(3) (Dec. 7, 2012).

A "Livery Vehicle" is defined as

> any limousine or other vehicle which is designed to carry
> fifteen or fewer passengers, including the driver, and

carries passengers for hire, business courtesy, employee
shuttle, customer shuttle, charter or other pre-arranged
transportation, and which vehicle is not required to obtain
a taxicab license pursuant to M.G.L. c. 40, §22.

Id. [3]

In turn, the City of Boston defines a "Taxi" as

[a] vehicle used, or designed to be used, for the
conveyance of persons for hire, from place to place, and
licensed by the Hackney Carriage Division of the Boston
Police Department.

Traffic Rules and Regulations, City of Boston (November 1,
2012).

It defines a "Livery Vehicle" as

A vehicle used, or designated to be used, for the
conveyance of less than sixteen (16) persons for hire, from
place to place, except a bus, streetcar, taxi or commercial
vehicle.

Id.

Finally, in January, 2016, the Massachusetts Department of

Transportation revised 540 Code Mass. Regs. § 2.05 to include a

"Personal Transportation Network Vehicle" which is defined as

a private passenger motor vehicle that is used by a
Transportation Network Company Driver to provide
Transportation Services for a Transportation Network
Company.

540 Code Mass. Regs. 2.05(3) (Jan. 16, 2015).

The regulations impose state-level requirements and

standards for entities and their drivers.

---

[3] The definitions of "taxicab" and "livery vehicle" were not
changed by the January, 2015, revision.

The Commissioner has imposed additional requirements on taxis operating in Boston, over and above the state regulations. The primary ordinance at issue is the City of Boston's Vehicle for Hire Ordinance ("Rule 403"), which requires that

> [i]n the City of Boston, no person, firm, or corporation driving or having charge of a taxicab or other private vehicle shall offer the vehicle for hire for the purpose of transporting, soliciting and/or picking up a passenger or passengers unless said person is licensed as a hackney driver and said vehicle is licensed as a hackney carriage by the Police Commissioner.

City of Boston Code 16-15.05: Vehicle for Hire Ordinance (Appendix I to Rule 403).

Uber relies heavily on the fact that Rule 403 was not enforced against it between 2013 and 2016.  Nor was the Rule enforced against livery vehicles, Uber contends, even though it seems to apply to livery vehicles as well.  The statutory and regulatory framework does, however, distinguish between Uber and livery vehicles.  State regulations explicitly state that livery vehicles are "not required to obtain a taxicab license" pursuant to state regulation. 540 Code Mass. Regs. 2.05(3) (Dec. 7, 2012).  Uber can point to no such regulation or ordinance with respect to TNCs during the complained of period.

### iii.  Analogous caselaw does not preclude plaintiffs' claim

Neither Massachusetts courts nor the United States Circuit Court of Appeals for the First Circuit ("First Circuit") has determined whether Uber's conduct was permissible under the Taxi

Rules during the relevant period.  Accordingly, Uber maintains,

this Court should not interpret Rule 403 pursuant to the

doctrine propounded in Dial A Car, Inc. v. Transportation, Inc.,

82 F.3d 484, 489 (D.C. Cir. 1996), which it contends is "the

leading case" on the issue at hand and dispositive.

The Dial a Car doctrine is a prudential principle that a

federal court should not interpret an ambiguous local regulation

until the local regulator has addressed the issue. See id.  In

Dial a Car, a licensed, on-call taxi service alleged that two

defendant taxi companies were illegally providing unlicensed

taxi services within the District of Columbia.  Id. at 484.  The

plaintiff brought a Lanham Act claim alleging that defendants

misled customers by holding themselves out as an authorized

business. Id. at 488.  The Circuit Court of Appeals for the

District of Columbia affirmed dismissal of plaintiff's claim,

explaining that it saw "no reason to reach out and apply federal

law to this quintessentially local dispute." Id. at 488-89.

Accordingly, the court held that

> there must be a clear and unambiguous statement from the
> Taxicab Commission regarding [defendants'] status before a
> Lanham Act claim can be entertained.

Id. at 489.

The reasoning in the Dial a Car decision is not controlling

with respect to the issue before this Court if for no other

reason than that the First Circuit has neither adopted nor cited the case.

Furthermore, the Dial a Car court's justification for abstention, grounded in principles of federalism, does not apply to the unfair competition claims of these plaintiffs.  The D.C. Circuit Court took particular issue with the fact that the claim in that case was brought under the Lanham Act in an effort to transform a federal statute "into a handy device to reach and decide all sorts of local law questions." Id. at 491.  In the present case, by contrast, plaintiffs rely on state regulations, statutes and common law that is designed to hold a business to a "standard of lawfulness."  See J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Health Care, Inc., 365 F. Supp. 2d 119, 145 (D. Mass. 2005) (emphasis in original).  Under the regulations of the Attorney General of Massachusetts, an act or practice violates Chapter 93A, § 2 if it "fails to comply with existing statutes, rules, regulations or laws" meant for the protection of the public's health, safety or welfare. 940 Code Mass. Regs. 3.16(3).  Uber does not dispute that the Taxi Rules are designed for the public's health, safety or welfare and there is

> no reason to assume that [section 3.16(3)] ought not apply
> to claims brought pursuant to section 11 [of Chapter 93A].

J.E. Pierce Apothecary, 365 F. Supp. 2d at 145.

Even if the Dial a Car doctrine applied to this case,
Uber's application of it is inapposite.  The D.C. Circuit Court
acknowledged that a regulation might "be so clear on its face
that no good faith doubt concerning its interpretation would be
possible." Dial A Car, 82 F.3d at 489 n. 3.  In such a case, the
Court explained, no explicit statement from the municipal
regulator would be necessary.  Because the Court found that the
regulatory scheme in the Dial a Car case was, "at the very
least, ambiguous with regard to the legality" of the defendants'
conduct, the regulation was found insufficiently clear for
Lanham Act purposes. Id.

In sharp distinction, the regulatory scheme in this case is
"so clear on its face that no good faith doubt concerning its
interpretation" is possible. Under the rubric of Rule 403, Uber
is a

> corporation . . . having charge of a . . . private vehicle
> [that] offer[s] the vehicle for hire for the purpose of
> transporting . . . a passenger or passengers.

Those vehicles were not, at the operative time, licensed as
hackney carriages by the Police Commissioner.  A response from
Uber that it did not "hav[e] charge" of the vehicles is
underwhelming.  If this Court were to find that Uber did not
have control over its drivers, then its business model would
consist of aiding and abetting the "private vehicle[s]" of those

drivers, none of which was licensed as a hackney carriage by the Police Commissioner.  Under either reading, there is "no good faith doubt" that Uber was (during the subject interlude and if the facts alleged are proved) engaged in unlawful behavior. See id. at 489 n. 3.

For all of these reasons, the Dial a Car doctrine does not compel this Court to dismiss plaintiffs' unfair competition claims.

### iv.   Uber is not exempt from Chapter 93A liability

Chapter 93A exempts from liability

transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the Commonwealth.

M.G.L. c. 93A, § 3.

Uber contends that it was exempt from Chapter 93A because the Commonwealth authorized its conduct.  It has failed, however, to satisfy the rigorous requirements for application of that statutory safe haven.

"Defendants have the burden of proving the exemption" and that burden is a "heavy one". See Fleming v. National Union Fire Ins. Co., 445 Mass. 381, 389 (2005). A defendant must show that the Commonwealth's regulatory scheme "affirmatively permits the practice which is alleged to be unfair or deceptive." Id. at 390 (quotation omitted).

-23-

Uber relies on three arguments.  First, it repeats its contention that Rule 403 never applied to it or to its drivers. That argument fails for the reasons articulated above.

Second, it emphasizes that Rule 403 was not enforced against it.  Drawing all inferences in favor of the plaintiffs, as the Court must do at this stage, they have plausibly alleged that Rule 403 or its equivalent in other municipalities was, at least occasionally, enforced against Uber drivers.  Even if that were not the case, regulatory forbearance is insufficient to prompt exemption under § 3.  A defendant must show that the regulatory scheme "affirmatively permits the practice which is alleged to be unfair or deceptive." Id. (emphasis added). Failure to enforce a regulation is insufficient.

Finally, Uber submits that the TNC Act codified the fact that the Taxi Rules did not apply to it.  The Court disagrees. Massachusetts courts interpret statutes with a presumption against retroactivity.  See generally Fed. Nat. Mortg. Ass'n v. Nunez, 460 Mass. 511 (2011).  Accordingly, a statute only applies retroactively if it is "unequivocally clear . . . from the words, context or objects" of the statute that the legislature intended it to be retroactive in operation. Smith v. Massachusetts Bay Transp. Auth., 462 Mass. 370, 377 (2012).  No

such "unequivocally clear" intention is evident from the TNC
Act.

Uber's conduct is not exempted from liability under Chapter
93A, section 3.

### v.  Other litigation involving Uber does not compel dismissal

Uber cites a number of cases in which taxi companies have
brought actions involving unfair competition and regulation of
TNCs.  The Court agrees with defendant that, since the TNC Act
was enacted, Uber has not been required to comply with local
taxi ordinances. Accord Boston Taxi Owners Ass'n, Inc. v. City
of Boston, 223 F. Supp. 3d 119, 122 (D. Mass. 2016).  On the
other hand, no case that Uber cites justifies dismissal of
plaintiffs' unfair competition claims given the relevant law,
alleged facts and regulatory framework.

Some of the cases Uber cites are simply beside the point.
For instance, plaintiffs do not challenge the legality of the
Taxi Rules or the TNC Act. Contra, e.g., Boston Taxi Owners
Ass'n, Inc. v. Baker, 2017 WL 354010 (D. Mass. Jan. 24, 2017),
appeal dismissed, 2017 WL 3758297 (1st Cir. Mar. 27, 2017);
Illinois Transportation Trade Ass'n v. City of Chicago, 839 F.3d
594, 599 (7th Cir. 2016), cert. denied sub nom. Illinois Transp.
Trade Ass'n v. City of Chicago, Ill., 137 S. Ct. 1829 (2017)

(dismissing equal protection and takings challenges to the City of Chicago's TNC ordinance).

Other cases upon which Uber relies depend on different operative law.  The California Public Utilities Code, for example, forbids courts, except the California Supreme Court and Court of Appeal, from hindering or interfering with the California Public Utilities Commission's exercise of regulatory authority. See A White & Yellow Cab, Inc. v. Uber Techs., Inc., 2017 WL 4642346, at *3-4 (N.D. Cal. Oct. 17, 2017) (dismissing plaintiff's unfair competition and unfair practices claims because a ruling in plaintiff's favor would "hinder or interfere with a broad and continuing CPUC program") (citing California Public Utilities Code § 1759(a)) (additional citation omitted).

Massachusetts state law has a more expansive understanding of unfair competition than do other states. Cf. Checker Cab Philadelphia, Inc. v. Uber Techs., Inc., 689 F. App'x 707, 709 (3d Cir. 2017) (explaining that, under Pennsylvania law, unfair competition is limited to an entity passing off its product as another, dishonest statements, tortious interference with contract or intellectual property theft) (citations omitted); Greenwich Taxi, Inc. v. Uber Techs., Inc., 123 F. Supp. 3d 327, 340 (D. Conn. 2015) (stating that, under Connecticut law, unfair competition is guided by the Federal Trade Commission's

-26-

"cigarette rule").   Chapter 93A, by contrast, renders violations

of public safety regulations actionable. <u>See</u> 940 Code Mass.

Regs. 3.16(3).

Finally, Uber cites a handful of cases where courts have

relied on <u>Dial a Car</u> to find that plaintiffs could not state a

claim for unfair competition based on regulatory violations.

Those cases, too, are of no consequence.  For instance, in <u>Manzo</u>

v. <u>Uber Techs., Inc.</u>, 2014 WL 3495401, at *4 (N.D. Ill. July 14,

2014), the court maintained that the ordinance at issue was

ambiguous. <u>Id.</u> (explaining that whether a smartphone equipped

with Uber constituted a "taximeter" as that term was defined by

the city ordinance was ambiguous).  This Court has explained why

the regulatory framework at issue here is unambiguous.

Uber fails to distinguish cases where courts have allowed

unfair competition claims based on Uber's non-compliance with

local regulation.  <u>See</u>, <u>e.g.</u>, <u>The Yellow Cab Co.</u> v. <u>Uber Techs.,</u>

<u>Inc.</u>, 2015 WL 4987653, at *5-6 (D. Md. Aug. 19, 2015) (finding

that plaintiffs demonstrated a possibility of success on their

common law unfair competition claim because the "expansive

scope" of Maryland's unfair competition law does not impose a

fraud or deceit requirement). Most importantly, Uber fails to

distinguish the similar claims with which it has already been

confronted in this Court.

Although the facts and legal arguments vary somewhat, this Court held that plaintiffs had sufficiently stated a claim that

> Uber unfairly competes with plaintiffs, in violation of Chapter 93A, [] by operating its service without incurring the expense of compliance with Massachusetts law and Boston ordinances.

Boston Cab Dispatch, Inc. v. Uber Techs., Inc., 2014 WL 1338148, at *6-7 (D. Mass. Mar. 27, 2014).

The Court also found that plaintiffs had stated a common law unfair competition claim based upon the same conduct. Id. at *7. Defendant does not distinguish Boston Cab from the present action. Indeed, it does not cite that case anywhere nor explain why this Court should rule differently than it did before.[4] The Court finds no reason to do so. Plaintiffs have state a claim for unfair competition.

Accordingly, defendant's motion to dismiss will, with respect to the statutory and common law unfair competition claims, be denied.

> **2.   Attempt to monopolize under the Sherman Antitrust Act, 15 U.S.C. § 2 and the Massachusetts Antitrust Act, M.G.L. c. 93 § 5**

The Malden, Dot Ave, Max Luc and Taxi Maintenance plaintiffs all bring actions for attempt to monopolize in

---

[4] In its proposed reply memorandum Uber proffers an unconvincing distinction. It contrasts the magistrate judge's analysis of the plaintiffs' Lanham Act claim with the unfair competition claim before this Court but it fails to distinguish the unfair competition claim in the earlier case with the unfair competition claim here.

violation of the Sherman Antitrust Act and the Massachusetts

Antitrust Act, M.G.L. c. 93 § 5.[5]

Plaintiffs argue that Uber has attempted to drive taxi

companies out of business through the use of its allegedly

predatorily priced UberX service.  Defendants respond that

plaintiffs have not met the high burden of alleging a predatory

pricing claim.

Section 2 of the Sherman Act makes it illegal to

monopolize, or attempt to monopolize, or combine or
conspire with any other person or persons, to monopolize
any part of the trade or commerce among the several States,
or with foreign nations.

15 U.S.C. § 2.

To state a monopolization claim under § 2, a plaintiff must

adequately allege that defendant (1) has monopoly power in the

relevant market and (2) has engaged in illicit "exclusionary

practices" with "the design or effect of protecting or enhancing

its monopoly position." Sterling Merch., Inc. v. Nestle, S.A.,

656 F.3d 112, 125 (1st Cir. 2011) (quoting Coastal Fuels of

P.R., Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 195 (1st

Cir. 1996) (internal citation omitted)).

One kind of exclusionary practice is the practice of

"predatory pricing".  In this scheme, a company reduces the

---

[5] Neither party contends that the legal standard varies for the
state law claim.

price of its product to below cost, hoping to drive competitors out of business and then raise prices once it has achieved a monopoly position. See Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 584-585, n. 8 (1986).  To succeed on a predatory pricing claim a plaintiff must demonstrate that

> the prices complained of are below an appropriate measure of its rival's costs . . . [and that the competitor had] a dangerous probability of recouping its investment in below-cost prices.

Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 222, 224 (U.S. 1993).

Because an economically unsound approach by a competitor could actually benefit consumers, plaintiffs must explain with particularity "just what the arrangements were and why they plausibly constituted antitrust violations." See Am. Steel Erectors v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 815 F.3d 43, 71 (1st Cir. 2016) (quoting Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I., 373 F.3d 57, 65 (1st Cir. 2004)).

Plaintiffs fail to allege facts supporting a predatory pricing claim.

Plaintiffs do not allege that Uber's services were priced below Uber's costs.  Accordingly, they have failed to "explain in detail" why Uber's conduct constituted an antitrust violation. See id.  No complaint alleges any facts with respect

to Uber's costs.  Instead, the Malden complaint repeatedly states that Uber employs a "below-cost pricing scheme".  Such "threadbare recitals of a cause of action's elements, supported by mere conclusory statements, do not suffice" survive the motion to dismiss stage. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

Plaintiffs repeatedly allege that UberX was priced below the cost of a taxi.  But to state a claim for antitrust injury from a rival's low prices, a plaintiff must allege that "the prices complained of are below an appropriate measure of its rival's costs." See Brooke Group, 509 U.S. at 222 (emphasis added).

Plaintiffs attempt to bolster their predatory pricing claims by noting that Uber has lost "billions of dollars".  That allegation lacks the particularity required from an antitrust plaintiff.  If Uber's "unconventional approach is economically unsound," then it may just be "a boon to consumers." Am. Steel Erectors, 815 F.3d at 71 (quoting Brooke Group, 509 U.S. at 224).  Without specific factual allegations as to Uber's costs, plaintiffs' invocation of Uber's annual deficits is unavailing.

Because plaintiffs have failed adequately to allege a claim for predatory pricing, the defendants' motion to dismiss will, with respect to plaintiffs' antitrust claims, be allowed.

###### 3.   Aiding and abetting and civil conspiracy to engage in unfair competition in violation of the common law and the Massachusetts Consumer Protection Act, M.G.L. c. 93A

The Anoush and Taxi Maintenance plaintiffs each allege a different theory of civil conspiracy to engage in unfair competition in violation of the common law and Massachusetts statutory law.  The Anoush plaintiffs allege that Uber conspired with its independent contractor, third-party drivers.  The Taxi maintenance plaintiffs allege that the individual defendants, Uber and Uber's employees entered into a common conspiracy.  Both conspiracy claims include allegations that Uber had a common plan, design and agreement to operate in violation of the Taxi Rules.

Under Massachusetts law, a defendant may be liable for aiding and abetting a tort where

> (1) a third-party committed the relevant tort; (2) the defendant knew the third-party was committing the tort; and (3) the defendant actively participated in or substantially assisted in the commission of the tort.

Doe v. Brandeis Univ., 177 F. Supp. 3d 561, 616 (D. Mass. 2016) (citing Go-Best Assets Ltd. v. Citizens Bank of Mass., 463 Mass. 50, 64 (2012); Restatement (Second) of Torts § 876(b) (1977)).

Massachusetts courts recognize a tort of civil conspiracy that is a form of vicarious liability for the tortious conduct of others. Snyder v. Collura, 812 F.3d 46, 52 (1st Cir.), cert. denied, 136 S. Ct. 2517 (2016) (citing Taylor v. Am. Chemistry

Council, 576 F.3d 16, 34 (1st Cir. 2009)).  To state a claim for civil conspiracy, a plaintiff must allege that the conspiring parties agreed to or assisted in committing the underlying tort. Taylor, 576 F.3d at 35 (citations omitted).

First, the Court notes that (as it has already found) it lacks personal jurisdiction over the individual defendants. With respect to the Taxi Maintenance plaintiffs' contention that Uber conspired with its employees, the claim is legally untenable.  No civil conspiracy can exist under plaintiffs' theory because "an entity cannot conspire with itself."  Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 131 (1st Cir. 2006).

The Anoush plaintiffs' theory represents a more belt-and-suspenders approach to pleading.  In Count I of their complaint they allege that Uber controls and manages its drivers, such that Uber is directly liable for violating Chapter 93A.  Their claims of civil conspiracy and aiding and abetting, (Counts III and IV), however, resort to Plan B.  They allege that if Uber did not violate the Taxi Rules, they facilitated the violation of those rules by assisting Uber drivers in an unlawful business.

Plaintiffs have pled facts sufficient to establish that Uber gave substantial assistance to its drivers to violate the Taxi Rules.  Both Uber and the plaintiffs agree that Uber

-33-

classifies its drivers as "independent third-party drivers".
Both parties agree that Uber connects the drivers to passengers
through its smart phone application and that Uber collects the
fares for its drivers.  The parties disagree on the issue of
whether Uber's drivers were subject to the Taxi Rules.

This Court finds that the text of Rule 403 clearly applies
to Uber drivers.  If Uber denies that it "controls" the drivers
(such that it is not subject to direct liability), it cannot
dispute that its drivers drove

> other private vehicle[s] [that were] offer[ed] for hire for
> the purpose of transporting . . . passengers [and that
> those vehicles were not] licensed as a hackney carriage by
> the Police Commissioner.

Finally, plaintiffs have pled facts sufficient to indicate,
if proved, that Uber had knowledge that its drivers were
committing torts. See also Boston Cab Dispatch, Inc. v. Uber
Techs., Inc., 2015 WL 314131, at *6-7 (D. Mass. Mar. 27, 2014)
(denying defendant's motion to dismiss where plaintiffs alleged
that Uber competed unfairly in violation of the common law and
M.G.L. c. 93A, § 11).

Uber claims that it does not control its drivers but rather
that the drivers are independent contractors.  The courts in
which it has proffered such claims have not necessarily seen it
that way.  See, e.g., O'Connor v. Uber Techs., Inc., 82 F. Supp.
3d 1133, 1135 (N.D. Cal. 2015) (denying Uber's motion for

summary judgment that Uber drivers are independent contractors as a matter of law); Mumin v. Uber Techs., Inc., 239 F. Supp. 3d 507, 532 (E.D.N.Y. 2017) (holding that plaintiff stated a plausible overtime claim under New York labor law under theory that Uber misclassified its drivers as independent contractors); Razak v. Uber Techs., Inc., 2016 WL 5874822, at *5 (E.D. Pa. Oct. 7, 2016) (holding that Uber driver stated a plausible claim under state and federal labor law that they were employees of Uber).  Based on the litigated position of Uber, then, plaintiffs have stated a plausible claim.

Defendants' motion to dismiss the conspiracy and aiding and abetting claims will, with respect to the claim of the Taxi Maintenance plaintiffs, be allowed but, with respect to the claim of the Anoush plaintiffs, be denied.

### 4.   Interference with advantageous business relationships

The Taxi Maintenance plaintiffs bring a count of interference with advantageous business relationships.  They allege that Uber interfered with identifiable business relationships through improper means with improper motives. Uber responds that the complaint alleges that it interfered with the "market-at-large", which is insufficiently precise to state a claim.

According to Massachusetts law, a claim for tortious interference with advantageous business relationships requires four elements: (1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result. Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34 (2004) (citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812, 815-17 (1990)). To demonstrate an anticipated business relationship, a plaintiff must show that it "had a probable future business relationship anticipating a reasonable expectancy of financial benefit." Brown v. Armstrong, 957 F. Supp. 1293, 1305 (D. Mass. 1997), aff'd, 129 F.3d 1252 (1st Cir. 1997) (citation omitted).  A plaintiff cannot rely on speculative future relationships but must allege that a specific business relationship existed between itself and the potential customer. See Sherman v. Clear Channel Outdoor, Inc., 889 F. Supp. 2d 168, 177 (D. Mass. 2012).

Plaintiffs claim that they had a prospective business relationship with every person seeking ride-hailing services in the City of Boston.  They explain that, before Uber began operating in Boston, "every individual seeking for-hire services

-36-

in Boston was a <u>de facto</u> customer" of the regulated taxi companies.  That evanescent, hypothetical relationship lacks the specificity required to survive a motion to dismiss.

A plaintiff "may not speculate about future business relationships when alleging this tort." <u>Singh</u> v. <u>Blue Cross/Blue Shield of Massachusetts, Inc.</u>, 308 F.3d 25, 48 (1st Cir. 2002). Instead, they must allege "a specific business relationship that was interfered with by [defendant]." <u>See</u> <u>id.</u>  The "mere possibility that [their] proposal would be accepted by [the customers] is not sufficient." <u>Sherman</u>, 889 F. Supp. 2d at 177.

Because plaintiffs have failed to allege that they were involved in a specific anticipated business relationship, defendants' motion to dismiss for failure to state a claim upon which relief can be granted will be allowed. <u>Cf.</u> <u>Moving & Storage, Inc.</u> v. <u>Panayotov</u>, 2014 WL 949830, at *3 (D. Mass. Mar. 12, 2014) (allowing motion to dismiss because the class of alleged customers included "any individual who may need moving services in the future").

### ORDER

For the foregoing reasons, the motion to dismiss of defendants Travis Kalanick and Garrett Camp (Docket No. 70), is **ALLOWED** and the consolidated motion to dismiss of defendants Uber, Travis Kalanick and Garrett Camp (Docket No. 72) is, with respect to the claims of antitrust violation and interference

with advantageous business relationships and the Taxi

Maintenance claim of civil conspiracy, **ALLOWED,** but is otherwise

**DENIED.**

The following claims of the named plaintiffs remain

pending:

1) the claims of all plaintiffs for unfair competition under

   the common law and M.G.L. c. 93A § 11.

2) the claims of the Anoush plaintiffs for:

   a)   aiding and abetting unfair competition in

        violation of the common law and M.G.L. c.

        93A, and

   b)   civil conspiracy to commit unfair

        competition in violation of the common law

        and M.G.L. c. 93A.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 29, 2017