**United States District Court**
**District of Massachusetts**

|  |  |
|---|---|
| ──────────────────────── ) | |
| Malden Transportation, Inc., et al., ) | |
| ) | Civil Action No. |
|       Plaintiffs, ) | 16-12538-NMG |
| ) | |
|       v. ) | consolidated with: |
| ) | 16-12651-NMG |
| Uber Technologies, Inc. and ) | 17-10142-NMG |
| Rasier, LLC, ) | 17-10180-NMG |
| ) | 17-10316-NMG |
|       Defendants. ) | 17-10598-NMG |
| ) | 17-10586-NMG |
| ──────────────────────── ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves a suit by taxi medallion holders ("the Anoush plaintiffs" or "plaintiffs") in the Greater Boston area who allege that Uber Technologies, Inc. and Raiser, LLC (collectively "Uber" or "defendants") competed unlawfully and unfairly in the on-demand, ride-hail ground transportation market in and around Boston, Massachusetts.

I.     **Background**

  A. **Regulatory Background**

The City of Boston has traditionally regulated taxis under a set of municipal rules, ordinances and regulations ("Taxi Rules"), for which the Police Commissioner has the exclusive authority to regulate hackney carriages and hackney stands.  In

- 1 -

2008, the Boston Police Department ("BPD") issued the Hackney

Carriage Rules and Flat Rate Handbook ("Rule 403"), which

regulates hackney carriage fares, medallions and hackney

licenses, among other things.  Rule 403 also incorporates a

previously promulgated Vehicle for Hire Ordinance ("the Boston

Ordinance"), which provides in relevant part:

> no person, firm, or corporation driving or having charge of
> a taxicab or other private vehicle shall offer the vehicle
> for hire for the purposes of transporting, soliciting
> and/or picking up a passenger or passengers unless said
> person is licensed as a hackney driver and said vehicle is
> licensed as a hackney carriage by the Police Commissioner.

City of Boston Code 16-15.05: Vehicle for Hire Ordinance; <u>see

also</u> Appendix I to Rule 403.  The Hackney Department of the BPD

is largely charged with implementing these Taxi Rules.

### B. Factual Background

In June, 2013, following separate conversations between

Uber management and the Hackney Department on the one hand, and

Uber and senior staff in the Mayor's office on the other, Uber

launched its own peer-to-peer ("P2P") application, UberX.  With

respect to UberX, Uber did not require its drivers to comply

with Rule 403 or the Boston Ordinance because its management

believed that the Taxi Rules applied only to taxi cabs, not

transportation network companies ("TNCs") such as Uber.

Shortly thereafter, uniformed officers began ticketing Uber

drivers for violating a variety of municipal and state

regulations, including the Boston Ordinance. From roughly July, 2013, to January, 2015, Uber acknowledged hundreds of police citations issued to UberX drivers. Although some drivers successfully challenged those tickets in court, Uber routinely reimbursed all other charged drivers. During this same time period, while Uber reimbursed its drivers for the cost of tickets, the Mayor's office made somewhat contradictory statements suggesting that the Taxi Rules did not apply to TNCs.

This regulatory uncertainty persisted until August, 2016, when the Massachusetts legislature enacted the Transportation Network Companies Act ("the TNC Act"). See M.G.L. c. 159A ½. The TNC Act preempts municipalities from regulating TNCs through local municipal rules and vests regulatory jurisdiction in the Massachusetts Department of Public Utilities and the Massachusetts Port Authority. See id. at § 10.

Following this Court's order which allowed, in part, and denied, in part, defendants' motion to dismiss (Docket No. 96), the parties submitted cross motions for summary judgment with respect to plaintiffs' claims for unfair competition from June, 2013, to August, 2016 ("the alleged unlawful conduct period"). Plaintiffs have moved for partial summary judgment on their claim of liability (under Chapter 93A and common law) and defendants' § 3 and superseding cause defenses. Defendants have moved for summary judgment on plaintiffs' claim of liability

(under Chapter 93A and common law) and on its res judicata and
§ 3 defenses.

For the reasons set forth below, both parties' motions will
be denied (with the exception of plaintiffs' motion for partial
summary judgment on defendants' § 3 defense) and the Court will
promptly convene a bench trial in accordance with this opinion.[1]

## II.  Legal Analysis

### A. Legal Standard

The role of summary judgment is to assess the proof in
order to see whether there is a genuine need for trial. Mesnick
v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  The
burden is on the moving party to show, through the pleadings,
discovery and affidavits, that there is "no genuine dispute as
to any material fact and that the movant is entitled to judgment
as a matter of law". FED. R. CIV. P. 56(a).  A fact is material if
it "might affect the outcome of the suit under the governing
law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
A genuine issue of material fact exists where the evidence with
respect to the material fact in dispute "is such that a
reasonable jury could return a verdict for the nonmoving party".
Id.

---

[1] The parties have stipulated 1) that the summary judgment
motions pertain only to the Anoush plaintiffs because the other
consolidated plaintiffs have reached a tentative settlement
agreement and 2) to a bench trial before this Court.

If the moving party has satisfied its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the nonmoving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate if, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322–23.

When parties file cross-motions for summary judgment on a particular count, the Court must assess each motion separately and determine whether there is any genuine issue of material fact and whether either movant is entitled to judgment. Phillip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n. 4 (1st Cir. 1997).

**B. Cross Motions for Summary Judgment**

**1. Chapter 93A Liability**

To be successful under M.G.L. c. 93A, § 11, plaintiffs must establish 1) that defendants engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by M.G.L. c. 93A, § 2, or the regulations promulgated

thereunder; 2) a loss of money or property suffered as a result

and 3) a causal connection between the loss suffered and the

defendants' unfair or deceptive method, act or practice. <u>Auto</u>

<u>Flat Car Crushers, Inc.</u> v. <u>Hanover Ins. Co.</u>, 17 N.E.3d 1066,

1074-75 (2014).

### a. Liability under § 2(c)

First, the Court finds that plaintiffs are not entitled to

summary judgment on liability based on § 2 per se unfairness.

Pursuant to § 2, paragraph (c) of Chapter 93A, the Massachusetts

Attorney General promulgated 940 C.M.R. § 3.16, which provides

that an act or practice violates Chapter 93A, § 2 if:

> [i]t fails to comply with existing statutes, rules,
> regulations or laws, meant for the protection of the
> public's health, safety, or welfare promulgated by the
> Commonwealth or any political subdivision thereof intended
> to provide the consumers of this Commonwealth protection.

940 C.M.R. § 3.16(3).

While this Court finds that the Taxi Rules were designed

for the public's health, safety and welfare, the First Circuit

Court of Appeals ("First Circuit") has held that § 3.16 does not

apply to business-to-business disputes under § 11. <u>See</u>

<u>LimoLiner, Inc.</u> v. <u>Dattco, Inc.</u>, 809 F.3d 33, 36 (1st Cir. 2015)

(concluding that § 3.16 does not apply to business-to-business

disputes) <u>but</u> <u>see</u> <u>Limoliner, Inc.</u> v. <u>Dattco, Inc.</u>, 57 N.E.3d

969, 976 n.11 (2016) (noting the general dispute among courts as

to whether the Attorney General's regulations pursuant to Chapter 93A apply only to consumers).

Accordingly, this Court declines to find, as a matter of law, that Uber's failure to comply with the Taxi Rules constitutes a per se violation under § 2(c).

### b. Unfair Practices and Competition

Having disposed with the § 3.16 claim for per se unfairness, the Court turns to the parties' respective arguments on whether Uber's conduct during the alleged unlawful conduct period falls

> within at least the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to consumers.

Exxon Mobil Corp. v. Attorney Gen., 94 N.E.3d 786, 792 (Mass. 2018) (defining unfairness under 93A).

### i. Failure to Comply with Taxi Rules

Plaintiffs argue that Uber engaged in unfair practices because Uber and its drivers did not comply with Rule 403. Neither the Malden nor the Katin decisions concludes that an unlicensed participant necessarily commits an unfair trade practice, and thus, plaintiffs' argument that the violation of the Taxi Rules, alone, constitutes unfair trade practice is unavailing. See Malden Transportation, Inc., 286 F. Supp. 3d at 274; Katin v. Nat'l Real Estate Info. Servs., Inc., No. CIV. A.

07-10882DPW, 2009 WL 929554, at *10 (D. Mass. Mar. 31, 2009)
("engaging in the unauthorized practice of law <u>may</u> constitute an
'unfair method of competition' within the meaning of Chapter
93A") (emphasis added).

Accordingly, plaintiffs are not entitled to summary
judgment on Chapter 93A liability solely on the basis of the
alleged Taxi Rule violations.

### ii. Egregiousness

With respect to the ultimate issue of whether Uber competed
unfairly under Chapter 93A, <u>i.e.</u>, with "egregiousness" or
"rascality" during the alleged unlawful conduct period, the
parties have set forth compelling and competing narratives. <u>See</u>
<u>Baker</u> v. <u>Goldman, Sachs & Co.</u>, 771 F.3d 37, 51 (1st Cir. 2014)
(finding that plaintiffs must prove more than "mere negligence";
they must prove "extreme or egregious" negligence).

On one hand, plaintiffs submit that Uber competed unfairly
because it knowingly violated the Taxi Rules by launching UberX
without appropriate hackney licenses and drivers (and thus was
able to price out taxi cabs) and did so with a callous disregard
for those rules and for the regulators who enforced them.
Defendants respond that their strategy in entering the market
under tacit regulatory approval was done in good faith and as a
result of their inventive and disruptive competition.  They

buttress this argument by pointing to internal communications and public communications disseminated by City decision makers.

After reviewing the totality of the evidence, this Court finds that Uber acted with reckless disregard for the City's Taxi Rules. They reimbursed their drivers for hundreds of tickets and told them that Uber was legal, despite acknowledging otherwise in private circles.

The Court notes that it will consider ticket evidence in this case, notwithstanding a purportedly contrary decision of the Massachusetts Supreme Judicial Court ("the SJC") in LePage v. Bumila, 552 N.E.2d 80 (Mass. 1990). In the LePage decision, the SJC held that the decision to pay a $40 traffic citation and to forgo a judicial appeal does not bear a sufficient relationship to whether the paying party acquiesces in or admits to the charges recited in the citation. Id. at 82. Here, the evidence that Uber paid off hundreds of tickets apparently is not intended to show that Uber in fact violated the rules but rather demonstrates that Uber was aware that the Hackney Department and the Police Commissioner were enforcing the rules against TNCs and that Uber, nevertheless, disregarded that enforcement.

Moreover, Uber avoided the costs of complying with those regulations and capitalized on the lack of enforcement by

engaging in "surge pricing".  In sum, there is no good faith
dispute that Uber violated the Taxi Rules.

Uber's violation of the Taxi Rules is, however, neither
necessary nor sufficient to prove a Chapter 93A claim.  See
Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics,
Inc., 552 F.3d 47, 69 (1st Cir. 2009).  Rather, the guiding
principle is whether Uber's actions would, under the totality of
the circumstances,

> raise an eyebrow of someone inured to the rough and tumble
> of the world of commerce.

Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149 (Mass. App.
Ct. 1979) (Kass, J.).

Under this standard, the Court reserves its finding of
liability because Uber has proffered some evidence that
management acted in good faith when it relied on statements made
by City decision makers during the alleged unlawful conduct
period.  Thus, because neither party has demonstrated as a
matter of law that Uber did or did not act egregiously, the
cross motions for summary judgment on Chapter 93A liability will
be denied.

### b. Actual Damages

Next, defendants argue that plaintiffs cannot establish
actual damages because 1) they have no protectable property
interest in the book value of taxi medallions, 2) even if taxi

medallions are "financial assets", only those plaintiffs who suffered an actual loss can recover and 3) purely economic damages are not recoverable under Chapter 93A.

Under § 11, plaintiffs must establish a "loss of money or property" resulting from defendants' unfair practices or competition. M.G.L. c. 93A, § 11. Here, the Court finds that plaintiffs have demonstrated actual economic damages (not property damages) sufficient to survive summary judgment for the following reasons

First, while plaintiffs likely have a property interest in the medallions themselves, they do not have a property interest in the diminishing value of those medallions. See Bos. Taxi Owners Ass'n, Inc. v. City of Bos., 180 F. Supp. 3d 108, 117 (D. Mass. 2016) ("the aggregation of the rights of all medallion owners does not create a right that is new in kind, the right to exclude non-medallion owners from the market."). Plaintiffs' claims of reduced medallion value represent alleged economic injury, not a loss of property under Chapter 93A.

Next, the Court finds defendants' Rule 10b-5 analysis with respect to financial assets to be instructive but ultimately unpersuasive. The more vigorous causation requirement in Rule 10b-5 cases is rooted in the concept that a stock can recover in price, even after the unlawful conduct has subsided, and thus any unrealized loss (i.e., from not selling the stock) is

speculative.  See Blue Chip Stamps v. Manor Drug Stores, 421 U.S.
723, 734-35 (1975).  Here, the experts agree that the structural
change in the transportation-for-hire market is permanent and
thus the depression in medallion values is not temporary or even
speculative.  Accordingly, the Court finds that the plaintiffs
may recover for any loss of value proven during the alleged
unlawful conduct period.

Finally, this Court agrees with plaintiffs that economic
damages are recoverable under M.G.L. c. 93A, § 11.  See Cummings
v. HPG Int'l, Inc., 244 F.3d 16, 26, n.3 (1st Cir. 2001).
Moreover, this Court finds that the decision in Canal Elec. Co.
v. Westinghouse Elec. Co., 973 F.2d 988 (1st Cir. 1992) is
inapposite.  In Canal, the First Circuit rejected a third-party
consumers' Chapter 93A claim because their alleged harm flowed
from defendants' negligence with respect to the plaintiff, not
the third-party consumers.  Id. at 998-99.  Not only is that case
factually distinguishable in that the third-party harm stemmed
from a contractual relationship (not present here), but
plaintiffs in this case have alleged that Uber acted egregiously
in disregarding applicable Taxi Rules.  Thus, Uber's claim for
an economic recovery bar under § 11 is unavailing.

## 2. Common Law Claims

### a. Unfair Competition

Plaintiffs argue that they are entitled to summary judgment on their common law unfairness claim for the same reasons set forth in their Chapter 93A claims. Because this Court has not found that Uber violated Chapter 93A, § 11 as a matter of law, plaintiffs' motion for summary judgment on its common law claim must fail as well.

Defendants rejoin that they are entitled to summary judgment because 1) plaintiffs' claims are time-barred and 2) common law unfair competition claims are limited to consumer confusion cases. This Court disagrees because, first, there is a dispute over when the alleged injury occurred and thus when the action accrued (see Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006)) and second, Massachusetts courts have long held that unfair competition is not limited to consumer confusion. See A.B. & C. Motor Trasnp. Co. v. Dep't of Pub. Utilities, 100 N.E.2d 560, 561 (Mass. 1951) (collecting cases) (holding that unlicensed competition in violation of statutory licensing requirements provides a basis for liability).

As such, this Court declines to dismiss the common law claim as a matter of law.

**b. Aiding and Abetting and Conspiracy**

Nor will the Court dismiss plaintiffs' claims for aiding and abetting and/or conspiracy as time-barred for the reasons set forth previously. On the merits, the Court finds that because the underlying tort necessary to prevail on aiding and abetting and/or conspiracy grounds remains in dispute, neither party is entitled to summary judgment on those common law claims.

**3. Section 3 Safe Harbor Defense**

Section 3 of Chapter 93A functions as a safe harbor for liability, stating that

> [n]othing in this chapter shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States.

Defendants bear the heavy burden of proving an exemption to liability under § 3. They must show more than the "mere existence of a related or even overlapping regulatory scheme" and that the scheme "affirmatively <u>permits</u> the practice which is alleged to be unfair or deceptive". <u>Aspinall</u> v. <u>Philip Morris, Inc.</u>, 902 N.E.2d 421, 424 (Mass. 2009).

**a. Regulatory Scheme**

Plaintiffs argue that the City's regulatory forbearance (<u>i.e.</u>, its lack of enforcement against other ridesharing companies prior to Uber's launch) is insufficient to prompt safe

harbor exemption.  This Court agrees and finds that the lack of
enforcement prior to Uber's entry into the market does not
constitute affirmative permission.  <u>See</u> <u>Fleming</u> v. <u>Nat'l Union</u>
<u>Fire Ins. Co.</u>, 837 N.E.2d 1113, 1121 (Mass. 2005).

Uber then argues that once the Massachusetts Department of
Transportation ("MassDOT") clarified 540 C.M.R. § 2.05 to
include TNCs, a statutorily-authorized regulator had permitted
the conduct at issue.  Uber's reliance on <u>O'Hara</u> v. <u>Diageo-
Guinness, USA, Inc.</u>, 306 F. Supp. 3d 441(D. Mass. 2018) for that
proposition, however, misses the mark.  In <u>O'Hara</u>, the Court
found that the federal regulation explicitly gave the regulating
entity authority to determine that the consumer label is not
deceptive, which was the subject of the Chapter 93A claim. <u>Id.</u>
at 455.  Uber has not demonstrated that the MassDOT rule
amendment gave the Commonwealth the explicit authority to
determine whether TNCs are subject to municipal rules.  Thus,
consistent with <u>Aspinall</u>, this Court finds that Uber has only
shown the "mere existence of a related or even overlapping
regulatory scheme that covers the transaction". <u>Aspinall</u>, 902
N.E.2d at 424.

### b. Officer Acting with Statutory Authority

Plaintiffs argue that neither Mitchell Weiss, the Chief of
Staff for Mayor Thomas Menino, nor Mark Cohen, the Director of
the Hackney Department, gave Uber affirmative permission to

launch and even if they purported to do so, they lacked the requisite authority.  Uber responds that Commissioner Davis determined that neither Uber nor Lyft violated the Taxi Rules, Hackney Captain Steven McLaughlin testified to that effect and this Court should give substantial deference to those interpretations.

Notwithstanding the fact that Commissioner Davis was not the Commissioner during the entire period of alleged unlawful conduct (and subsequently took a paid consulting position with Uber), defendants have not demonstrated that the then-Commissioner's opinion had long been a matter of "public record and discussion". Cf. Udall v. Tallman, 380 U.S. 1, 17 (1965) ("The Secretary's interpretation had, long prior to respondents' applications, been a matter of public record and discussion.").

As plaintiffs point out, Uber has not demonstrated that Commissioner Davis conveyed his opinion to Uber during the period of alleged unlawful conduct.  Nor can Uber plausibly rely on arguments set forth in its motion to dismiss in a preceding action that was filed during the tenure of Commissioner Evans. That motion to dismiss was filed in May, 2015, and suggests that whether Rule 403 applies to TNCs is "at best, open to interpretation".  Nothing about those limited statements constitutes an affirmative safe harbor exemption as a matter of law.

### i. Misplaced Reliance on Caselaw

First, the new testimony of Commissioner Davis does not bear upon this Court's prior ruling with respect to the deference doctrine set forth in <u>Dial A Car, Inc.</u> v. <u>Transportation, Inc.</u>, 82 F.3d 484 (D.C. Cir. 1996). Not only is the Court's justification for abstention in that case rooted in federalism concerns, which do not apply here, but also the subject Taxi Rules here are "so clear on [their] face that no good faith doubt concerning [their] interpretation" is possible. <u>Id.</u> at 489 n.3. As such, defendants' safe harbor claim rises and falls with their contention that government officials gave affirmative permission to launch <u>during</u> the alleged unlawful conduct period. It is not dependent on whether this Court gives deference to a particular interpretation of a regulator.

Next, Uber's extensive reliance on the <u>O'Hara</u> and <u>Dorrian</u> decisions to support the testimony of Commissioner Davis is also misplaced. In <u>O'Hara</u>, the regulating entity certified that the label of a particular product did not violate federal law, and thus, the Court found that plaintiffs could not subsequently claim that those approved labels were deceptive under Chapter 93A. <u>O'Hara</u>, 306 F. Supp. 3d at 463. Here, Uber cannot point to a similar affirmative and particularized approval. To be clear, this Court is not suggesting that formal rulemaking is required to satisfy § 3, but alleged oral statements by a Commissioner

after-the-fact or limited arguments in a motion to dismiss do not rise to the level of particularized approval. Cf. id. at 465.

Moreover, Dorrian is factually distinguishable because, in that case, prior to the alleged unfair conduct, the regulating agency issued written advisory opinions and amendments to regulations concluding that the defendants did not need a license to conduct business. Dorrian v. LVNV Funding, LLC, No. SUCV142684BLS2, 2017 WL 2218773, at *13 (Mass. Super. Mar. 30, 2017), vacated, 94 N.E.3d 370 (Mass. 2018). The Massachusetts appeals court subsequently held that, although the agency lacked the statutory authority to issue such an opinion, its apparent authority, based on its consistent written opinions on the issue for a number of years, constituted affirmative permission and thus defendants were entitled to a § 3 defense. Id. at *2, *13–14. By contrast, Uber has produced no evidence that any regulator with authority (apparent or otherwise) issued a similar written opinion affirmatively approving their conduct.

Because defendants have failed to proffer any evidence that Uber received written approval during the alleged unlawful conduct period, plaintiffs' motion for partial summary judgment on defendants' § 3 safe harbor defense will be allowed.

## C. Superseding Cause

Plaintiffs argue that the TNC Act is not a superseding cause of their damages because the enactment of that statute was reasonably foreseeable and was not independent from Uber's conduct (i.e., Uber leveraged its drivers and riders to lobby the Massachusetts legislature). Uber responds that plaintiffs' arguments are mistaken because 1) plaintiffs have failed to show "but for" and proximate cause and 2) Uber's lobbying efforts are protected by the First Amendment.

At this stage of the litigation, the Court is satisfied that plaintiffs have made a threshold showing of causation to survive summary judgment. They have failed, however, to demonstrate conclusively that the TNC Act is not a superseding cause. An intervening cause rises to the level of a superseding cause, thus destroying proximate cause in both negligence and intentional torts, as determined by the following factors:

> 1) the type of harm brought about, 2) the extraordinariness of the intervening force under the circumstances, 3) the causal relationship between the defendant's actions and the intervening force, 4) the role of a third person, 5) the third persons' liability to the plaintiff, and 6) the wrongfulness of the third person's conduct.

Springer v. Seaman, 821 F.2d 871, 877 (1st Cir. 1987), abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989).

Here, plaintiffs have focused on inapplicable malpractice law as opposed to the noted Springer factors. Moreover, because there is a dispute as to what Uber's role was in the enactment of the TNC Act, the Court declines to find as a matter of law that the TNC Act was not a superseding cause.

### D. Res Judicata

#### 1. Waiver

Uber avers that this case should be dismissed on the basis of res judicata. Normally, res judicata is waived if not raised in the answer, unless

> (i) the defendant asserts it without undue delay and the plaintiff is not unfairly prejudiced by any delay . . . or (ii) the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed.

Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir. 2003).

Here, Uber contends that plaintiffs are not unfairly prejudiced because they were fully aware of the prior litigation, Boston Cab Dispatch, Inc. and EJT Management, Inc. v. Uber Technologies, Inc., No. 13-cv-10769-NMG ("Boston Cab"), and were actively involved in that litigation. Yet, despite being a party to the Boston Cab litigation and cognizant of the relationship between EJT Management and the Anoush plaintiffs, Uber did not assert res judicata as an affirmative defense in its answer, motion to dismiss, initial disclosures or discovery responses. Moreover, to the extent Uber submits that asserting

an estoppel defense in its answer is sufficient to put plaintiffs on notice of a res judicata defense, that position has been specifically rejected by the First Circuit. See Davignon, 322 F.3d. at 15.  Thus, the viability of Uber's res judicata defense is tenuous.

   **2. Merits**

Even if Uber has not waived its res judicata defense, to prevail, it must prove 1) final judgment on the merits in an earlier action, 2) identity of the cause of action in both the earlier and later suits and 3) identity of parties or privies in the two suits. Havercombe v. Dep't of Educ. of Com. of P.R., 250 F.3d 1, 3 (1st Cir. 2001).

Uber proclaims that the Boston Cab plaintiffs are in privity with the Anoush plaintiffs because 1) the Boston Cab plaintiffs represented the interests of the medallion owners (i.e., the Anoush plaintiffs), 2) EJT Management and the Anoush plaintiffs have overlapping ownership and management, 3) President Mary Tarpy made corporate decisions for EJT and does so now on behalf of the Anoush plaintiffs and 4) the parties used the same Rule 30(b)(6) witness, accountant John Weeden.

Plaintiffs reply that Uber has not demonstrated how any of the six exceptions to non-party preclusion applies and contests defendants' assertions on the basis that 1) the management agreement between EJT and the Anoush plaintiffs did not

authorize EJT to file a lawsuit on behalf of the Anoush
plaintiffs, 2) EJT has no legal interest in the medallions owned
by the Anoush plaintiffs and 3) there is no evidence that the
Anoush plaintiffs exercised any control over the Boston Cab
litigation.

Because there is a material dispute with respect to
privity, the Court will not dismiss this suit on res judicata
grounds. See Taylor v. Sturgell, 553 U.S. 880, 892–93 (2008).

**ORDER**

For the foregoing reasons, plaintiffs' motion for partial
summary judgment on defendants' Chapter 93A, § 3 affirmative
defense (Docket No. 367, Part II) is **ALLOWED.**  Otherwise, the
cross motions for summary judgment (Docket Nos. 357, 367) are
**DENIED.**

At the jury-waived trial, which will be subject to time
limitations, the Court will consider the following issues:

1) Whether Uber acted egregiously when it violated the Taxi
   Rules in violation of Chapter 93A;

2) Whether plaintiffs suffered economic damages;

3) Whether Uber's alleged unfairness/egregious conduct
   caused plaintiffs' damages;

4) Whether Uber aided and abetted unfair conduct and/or
   engaged in a civil conspiracy to compete unfairly;

5) Whether Uber adequately provided plaintiffs with notice of its <u>res</u> <u>judicata</u> defense; and

6) Whether the EJT plaintiffs and the Anoush plaintiffs are in privity.

Furthermore, a pre-trial conference will be held on Wednesday, July 17, 2019, at 11:00 A.M. and the bench trial will commence on Thursday, July 18, 2019, at 9:00 A.M.


**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated July 3, 2019