```
1              IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF MASSACHUSETTS

3     * * * * * * * * * * * *    17CV10142-NMG
      ANOUSH CAB, INC., et al  *
4                              *
      VS.                      *    JULY 17, 2019
5                              *    11:17 A.M.
      UBER TECHNOLOGIES, INC.  *
6     and RAZOR SHARE          *
                               *    BOSTON, MA
7     * * * * * * * * * * * *

8           BEFORE THE HONORABLE NATHANIEL M. GORTON

9                       DISTRICT JUDGE

10                 (Final Pretrial Conference)

11    APPEARANCES:

12    FOR THE PLAINTIFFS:      EDWARD F. HABER, ESQ.
                               MICHELLE H. BLAUNER, ESQ.
13                             PATRICK J. VALLELY, ESQ.
                               IAN McLOUGHLIN, ESQ.
14                             ADAM M. STEWART, ESQ.
                               Shapiro Haber & Urmy LLP
15                             Seaport East
                               Two Seaport Lane
16                             Boston, MA 02210

17    FOR THE DEFENDANTS:      MICHAEL SHEETZ, ESQ.
                               ADAM S. GERSHENSON, ESQ.
18                             BEATRIZ MEJIA, ESQ.
                               ELIZABETH M. WRIGHT, ESQ.
19                             Cooley LLP
                               500 Boylston Street
20                             Boston, MA 02116

21                             KAREN L. DUNN, ESQ.
                               MEREDITH DEARBORN, ESQ.
22                             Boies Schiller Flexner LLP
                               1401 New York Avenue, NW
23                             Washington, DC  20005

24    Court Reporter:          Debra D. Lajoie, RPR-FCRR-CRI-RMR
                               One Courthouse Way
25                             Boston, MA  02210
```

1   17 JULY 2019 -- 11:17 A.M.

2        THE CLERK:  This is Civil Action No. 17-10142,

3   Anoush Cap, Inc, et al v. Uber Technologies, Inc.

4        Will counsel please identify themselves for the

5   record.

6        MR. HABER:  Good morning, Your Honor.

7   Edward Haber for the Plaintiffs from Shapiro, Haber &

8   Urmy.  With me is my partner Michelle Blauner and my

9   partner, Ian McLaughlin.

10        THE COURT:  Mr. Haber, Ms. Blauner and

11   Mr. McLoughlin, good morning.

12        MR. SHEETZ:  Good morning, Your Honor.

13   Michael Sheetz from Cooley, representing the

14   Defendants, Uber and Razor.  And with me are Carolyn

15   Dunn from Boies Schiller, Adam Gershenson from Cooley,

16   Meredith Dearborn from Boies Schiller, Liz Wright from

17   Cooley and Beatriz Mejia from Cooley.

18        THE COURT:  All right.  Good morning,

19   Mr. Sheetz, Ms. Dunn, Mr. Gershenson, and in the back

20   row it's Mr. Dearborn, Ms. Wright and Ms. Mejia.  Good

21   morning to you all.

22        MR. HABER:  Your Honor, I should have told you.

23   Patrick Vallely and Adam Stewart, also from my office.

24        THE COURT:  Mr. Vallely and Mr. Stewart, yes,

25   welcome.

1        So we are here on the final pretrial conference
2    in the Anoush Cab, Inc. v. Uber Technologies case, and
3    that's 17CV10142.
4        The parties to this case have stipulated to a
5    bench trial before me with respect to the Anoush Cab
6    Plaintiffs, and I understand that the remaining
7    Plaintiffs in the consolidated action; that is,
8    16CV12538, have agreed to a settlement.
9        The bench trial is going to commence tomorrow,
10    July 18th, 2019, at 9:30 a.m.  We're going to go day to
11    day, keeping in mind that this Court has judicial
12    business on the west coast starting Wednesday of next
13    week.  Each day, we will start at 9:30 a.m. and
14    conclude by about 3:30 p.m. with a short break in the
15    morning and a lunch recess from approximately 1:00 p.m.
16    till 2:00 p.m.
17        It is my judgment that this trial can and will
18    be completed in six trial days.  Therefore, each side
19    will have 12 hours to present their respective cases,
20    meaning the direct examination of their own witnesses,
21    the cross-examination of their opponent's witnesses and
22    closings.
23        The parties should also be aware that this case
24    will not be tried under seal.  Everything presented as
25    evidence will be admitted without restriction and will

1     be on the record.

2         And with reference -- with respect to the

3     specific schedule, this case will necessarily be tried

4     in two parts.  My commitment to the Multi-District

5     Litigation Panel is a big one, and I'm going to be gone

6     for three days next week, and so the way that I am

7     going to schedule this trial is that we will try it

8     tomorrow, Thursday, Friday, and then Monday, which

9     is -- what? -- the 22nd.

10        THE CLERK:  22nd.

11        THE COURT:  We will then have a one-week hiatus

12    and return with the second half of the trial to be

13    tried on Tuesday, Wednesday and Thursday, July 30th,

14    31st and August 1st.

15        Now, with respect to the trial-management

16    motions that have been filed, before I address the

17    Daubert motions and the subsequent motions in limine, I

18    will first address the five motions that pertain to the

19    trial management and witnesses.

20        First, the Defendants' motion to enforce the

21    Court's order on deposition hours, it's Docket No. 295.

22    The Defendants' motion to strike the deposition

23    testimony outside the 50-hour time limit set by this

24    Court is denied.  Because there was some ambiguity with

25    respect to the deposition time limits and because the

1     five hours in excess of the 50-hour time limit is

2     relatively insignificant, all deposition testimony may

3     be used as originally intended.

4          Second, Defendants' motion for efficient and

5     fair trial management, Docket No. 435.  Plaintiffs move

6     for the consolidated cases to be tried separately.

7     Because the other cases have been reported settled,

8     this motion is denied as moot.

9          Third, Plaintiffs' motion to compel Defendants

10    to substantially and in good faith respond to

11    Plaintiffs' requests for admissions with respect to

12    trial documents and evidence, it's Docket No. 546.  The

13    Court understands that the parties entered into a

14    stipulation with respect to the authenticity and

15    hearsay exceptions for requests for admission.  This is

16    an issue that the parties should be able to resolve

17    among themselves, and if they cannot, the Court will

18    resolve it but will charge the time taken against the

19    losing party or against both parties equally, if

20    determined that that is the appropriate way to proceed.

21    Accordingly, this motion is denied without prejudice.

22    To the extent Plaintiffs are seeking to require Uber to

23    authenticate Plaintiffs' own documents, Plaintiffs'

24    motion to compel is denied.

25          Fourth, Defendants' motion to compel

1    Mr. Ed Tutunjian to appear at trial or impose

2    sanctions, it's Docket No. 556.  The Court is informed

3    that Mr. Tutunjian has now agreed to appear at trial,

4    and, thus, this motion is denied as moot.  To the

5    extent Mr. Tutunjian's health may limit his ability to

6    testify for long periods of time, the Court is willing

7    to accommodate him but expects the parties to resolve

8    this issue.  Also, if it is found necessary, during the

9    one-week hiatus, his deposition could be videotaped and

10   used at trial the following week.

11        No. 5 is Defendants' motion to strike

12   Plaintiffs' banker witnesses or, in the alternative,

13   for the Court to grant pretrial depositions, Docket

14   No. 561.  Defendants' motion to strike is denied

15   without prejudice.  Plaintiffs' banker witnesses may

16   testify as fact witnesses, and the Court is not

17   convinced at this stage that there is any intention or

18   necessity to treat them as expert witnesses.

19        Turning, then, to the Daubert motions.  First,

20   Plaintiffs' motion in limine to exclude the evidence

21   offered by Defendants' expert, John R. Hauser, Docket

22   No. 415.  The Court will hear the testimony from

23   Mr. Hauser and reserve its finding on reliability or

24   weight for post-trial briefings.  Accordingly,

25   Plaintiffs' motion to exclude Hauser will be denied

1    without prejudice.

2           Second, Plaintiffs' motion in limine to exclude

3    certain expert testimony of Laura Stamm, Docket

4    No. 419.  Plaintiffs have not demonstrated that, at

5    this stage, Ms. Stamm's testimony should be excluded.

6    Thus, Plaintiffs' motion is denied without prejudice.

7    If Ms. Stamm's testimony is inconsistent with this

8    Court's summary judgment ruling with respect to the

9    sale of medallions and is found to be persuasive; that

10   is, that Plaintiffs had to have sold medallions during

11   the alleged unlawful conduct period to incur losses,

12   the Court may reconsider its summary judgment finding.

13          Third, Plaintiffs' motion to strike certain

14   rebuttal expert opinions offered by Uber's experts,

15   Laura Stamm and William Riggs, Docket No. 551, to which

16   the Defendants filed an opposition yesterday.

17   Plaintiffs' motion to strike is allowed in part and

18   denied in part.  To the extent that Ms. Stamm and

19   Mr. Riggs have offered new opinions, they will not be

20   considered by the Court unless Plaintiffs are permitted

21   to depose them, if Plaintiffs so choose, for up to one

22   hour each on this limited issue before their trial

23   testimony, with Defendants bearing the costs of daily

24   copy.

25          Fourth, Defendants' motion in limine to exclude

1   irrelevant and unreliable testimony on medallion

2   values, Docket No. 423.  This motion is limited to the

3   prospective testimony of Michael Williams and

4   John Weeden because the testimony of the other experts,

5   witnesses, relate to Plaintiffs that have since

6   settled.  With respect to Mr. Williams, the Court will

7   hear his testimony and assess his reliability at trial.

8   Mr. Weeden will be allowed to testify as a fact witness

9   only on the subject of reduced medallion values.

10  Accordingly, the motion is denied without prejudice.

11          Turning next to the motions in limine.  The

12  Court will first address the Plaintiffs' motions.

13  Plaintiffs' motion in limine to exclude evidence of

14  criminal convictions, Docket No. 439.  This motion is

15  denied because Mr. Tutunjian is alleged to have

16  purchased the subject medallions, and, thus, his

17  testimony is relevant, and Defendants will be permitted

18  to impeach an adverse witness pursuant to Federal Rule

19  of Evidence 609.

20          Second, Plaintiffs' motion in limine to protect

21  the integrity of the jury, Docket No. 441.  This motion

22  of course is denied as moot because the parties have

23  stipulated to a bench trial.

24          Third, Plaintiffs' motion in limine to exclude

25  argument of evidence that the Boston Vehicle for Hire

1    Ordinance did not apply to the ride-sharing services

2    provided by Uber and Uber drivers or that Uber or its

3    drivers did not violate the Boston Ordinance, Docket

4    No. 443.  Although the Court ruled at the summary

5    judgment stage that Uber violated the taxi rules, Uber

6    has raised a credible argument that City

7    decision-makers did not intend to enforce those rules

8    against transportation network companies.  Accordingly,

9    this motion is denied because this is the dispositive

10   issue of the case; that is, whether there is evidence

11   of Uber's good faith by virtue of the fact that the

12   subject Boston ordinance was not enforced consistently.

13        Fourth, Plaintiffs' motion in limine to preclude

14   evidence relating to newspaper articles and a

15   consulting report regarding the Boston taxi industry,

16   it's Docket No. 445.  The Court will reserve its

17   finding for trial but notes that it is inclined to find

18   that the newspaper articles are relevant and that the

19   consulting report falls under the authorized

20   investigation hearsay exception.  That's Federal Rule

21   of Evidence 803.8A(iii)(I).  Accordingly, Plaintiffs'

22   motion to preclude such evidence is denied without

23   prejudice.

24        Plaintiffs' motion in limine to preclude

25   evidence relating to Uber X driver Kenneth MacNeil,

1    Docket 446.  Because the Court has already ruled at

2    summary judgment that it will consider, for

3    state-of-mind purposes, evidence that Uber drivers were

4    issued hundreds of ticket citations, the Court finds

5    that Defendants may proffer rebuttal evidence with

6    respect to those tickets.  As such, Plaintiffs' motion

7    to preclude evidence relating to Mr. MacNeil is denied.

8         Sixth, Plaintiffs' motion in limine to exclude

9    evidence suggesting that Uber received permission from

10   Boston or other municipalities, Docket 449.  This

11   motion is denied as moot because the Court ruled at

12   summary judgment, subject to Defendants' motion for

13   reconsideration on this issue, that Uber is not

14   entitled to invoke a Chapter 93, Section 3, safe harbor

15   defense.  Nonetheless, the Court expects that Uber will

16   proffer this evidence as part of its good-faith

17   defense, and the Court will allow it to do so.

18        Seventh, Plaintiffs' motion in limine to

19   preclude testimony of former Boston Police

20   Commissioner, Edward Davis, III, Docket No. 450.  This

21   Court already ruled at summary judgment that Uber is

22   not entitled to a Section 3 safe harbor defense.

23   However, Commissioner Davis's testimony that relates to

24   his opinions during the alleged unlawful conduct period

25   are relevant and probative as to Uber's state of mind

1    and its good-faith defense.  Accordingly, Plaintiffs'

2    motion to preclude the Davis testimony is denied.

3         Eighth, Plaintiffs' motion in limine to preclude

4    evidence relating to purported taxi rule violations by

5    Plaintiffs, Docket 452.  Plaintiffs' motion is denied

6    without prejudice because the Court will consider the

7    relevance and the alleged unfair prejudice of such

8    evidence at trial.

9         Ninth, Plaintiffs' motion in limine to preclude

10   evidence regarding Defendants' purported regulatory

11   review, Docket 456.  Defendants have asserted that they

12   will not invoke an advice-of-counsel defense.  As such,

13   Defendants may present evidence via their Rule 30(b)(6)

14   witness that in-house counsel conduct regulatory

15   review, but counsel should be advised that such

16   evidence is of tenuous value, given that the Defendants

17   have not waived their attorney-client privilege.

18   Plaintiffs' motion is denied.

19        Turning to the Defendants' motions in limine.

20   Defendants' Motion in Limine No. 1 to exclude testimony

21   on Plaintiffs' purported unjust enrichment remedy,

22   Docket 461.  The motion is denied as moot because it

23   pertains to the Malden Plaintiffs who have settled, in

24   principle, with the Defendants.

25        Defendants' Motion in Limine No. 2 to exclude

1    late-produced and secondary evidence of Plaintiffs'

2    claims and damages, Docket 462.  This motion is denied

3    as moot because the secondary evidence relates to

4    Plaintiffs who have settled in principle.

5         Third, Defendants' Motion in Limine No. 3 to

6    exclude evidence of traffic citations to drivers on the

7    Uber platform, Docket 463.  The Court has already ruled

8    at summary judgment that it will consider the ticket

9    citation evidence, which goes to the Defendants' state

10   of mind.  Accordingly, the motion is denied.

11        Fourth, Defendants' Motion in Limine No. 4 to

12   exclude reference to prior orders in this case, Docket

13   No. 464.  The motion is denied as moot because the

14   parties have stipulated to a bench trial.

15        Now, fifth, Defendants' Motions in Limine 5, 6,

16   7, 9 and 11 will be treated together.  Those are

17   motions -- No. 5 is the Defendants' motion to exclude

18   irrelevant evidence about other Uber offerings, it's

19   Docket 465.  No. 6 is Defendants' motion to exclude

20   statements from Travis Kalanick regarding events

21   outside of Massachusetts, Docket 466.  No. 7 is

22   Defendants' motion to exclude evidence of Greyball

23   software tool, Docket 467.  No. 9 is Defendants' motion

24   to exclude evidence of Uber's value, total revenues and

25   initial public offering, that's Docket 469.  And No. 11

1    is Defendants' motion to exclude irrelevant,

2    non-Boston-based evidence and streamline the trial in

3    light of the settlement, it's Docket 509.  These

4    motions are all denied without prejudice.  The Court

5    will weigh the probative value of such evidence against

6    its alleged unfair prejudice at trial.

7          Sixth, Defendants' Motion in Limine No. 8 to

8    exclude evidence of the alleged misconduct by drivers

9    on the Uber platform, Docket 468.  This motion is

10   allowed in part and denied in part.  Plaintiffs will be

11   allowed to proffer evidence that the Uber X services

12   were unsatisfactory to customers, but this trial is not

13   going to be about sexual assault, and gratuitous

14   inflammatory statements will not be admitted on the

15   record.

16         Seventh, Defendants' Motion in Limine No. 10 to

17   exclude evidence protected under the Knorr-Pennington

18   doctrine.  These are Dockets No. 458 and 471.

19   Defendants seem to have filed their Knorr-Pennington

20   motion in limine twice, those two numbers referred to.

21   The Court is inclined to find that the Knorr-Pennington

22   doctrine does not apply here because Plaintiffs

23   apparently intend to introduce the petitioning activity

24   only to rebut an affirmative defense, not to establish

25   anti-trust liability, based on the petitioning activity

1    itself.   Thus, the Court will reserve its final ruling

2    on this motion until trial, but for now, those motions

3    will be denied without prejudice.

4         That concludes my rulings on all of the pending

5    motions.  Before we get to the miscellaneous issues, I

6    will hear counsel, if they have anything in this

7    regard, first from the Plaintiffs, Mr. Haber?

8         MR. HABER:  Could we have one moment, please,

9    Your Honor?

10         THE COURT:  Yes, you may.

11         (Pause)

12         THE COURT:  Ms. Blauner?

13         MS. BLAUNER:  Yes.  I don't have the motion

14    number.  With respect to the motion to strike the new

15    opinions regarding Ms. Stamm and Dr. Riggs relating to

16    the new theory of -- their new theory, the problem with

17    the --

18         THE COURT:  Well, why don't you try to find the

19    number so I can get back on the same --

20         MS. BLAUNER:  551.

21         THE COURT:  551.

22         MS. BLAUNER:  Yes.  Your Honor --

23         THE COURT:  Wait a minute.

24         Okay.

25         MS. BLAUNER:  Your Honor ruled that we would --

1    offered us the opportunity to take a deposition of

2    Ms. Stamm and Dr. Riggs on the subject.  The problem

3    with this opportunity is that we don't have the chance

4    to develop and present rebuttal evidence to this.  This

5    is an entirely new theory that came up because they

6    read a "New York Times" article, and the whole idea

7    that the medallion values may have been inflated was

8    never in this case; to the contrary, Ms. Stamm

9    testified at her deposition that, you know, that the

10   market was an open market for medallions.

11        So taking her deposition doesn't do enough

12   because we don't have the documents to be able to rebut

13   this entire new theory.  Had the Defendants timely

14   disclosed this theory, we could have hired an expert to

15   review the issues in medallion-lending, which we have

16   been denied the opportunity to do.  This was done at

17   the very last minute.

18        And also, Ms. Stamm is relying on -- she got the

19   idea for this new theory from the "New York Times"

20   article, but the documents she then relied upon were

21   documents that were produced long ago in the case.  If

22   she thought medallion prices were inflated, she should

23   have said it at the time.  And so, at this point in

24   time, to just give us an opportunity to depose these

25   experts for an hour each is not a satisfactory remedy,

1  given the fact that we haven't had the opportunity to

2  have an expert review this.

3       THE COURT:  All right.  Let me hear from the

4  Defendants in that regard.  And it will be

5  Mr. Gershenson?

6       MR. GERSHENSON:  Please, Your Honor.

7       Plaintiffs are trying to remove from this case

8  important evidence that the medallion values were

9  inflated due to loose lending practices that they

10  participated in and deflated for reasons that have

11  nothing to do with Uber.  That's critical to the

12  causal -- causation point that Your Honor pointed out

13  in the summary judgment motion.  Now, they say it's a

14  new --

15       THE COURT:  What about Ms. Blauner's statement,

16  however, that this is based on an article that they

17  can't now respond to simply by taking her deposition?

18       MR. GERSHENSON:  Of course, Your Honor.  So, if

19  you heard Ms. Blauner, she said, Well, it's primarily

20  based on documents that were produced earlier.  So they

21  have the documents.  They can question them on those.

22  That's the Boston evidence.

23       Moreover, we timely disclosed this -- first of

24  all, I asked their witness, as Ms. Blauner knows very

25  well, three times, "Did you look at the inflated value

1    of medallions?  Did you look at the bubble?"  Over and

2    over.  He said, "No, I didn't take it into account.  I

3    didn't take it into account."  So this has been on the

4    table for quite some time.  So then the articles came

5    out and revealed the same bankers, same practices, same

6    results in Boston, and we have the evidence that

7    supports it over and over again.

8           So if they want to test that evidence in the

9    deposition, that's fine with us, in two depositions,

10   that's fine with us.  It was timely disclosed under

11   Rule 26, it was promptly disclosed immediately after

12   the articles with supporting evidence, it's justified,

13   it's crucial evidence, there's no surprise, and they

14   have every opportunity to test the theory.

15          THE COURT:  Ms. Blauner?

16          MS. BLAUNER:  Your Honor, like I said, this was

17   never an issue in this case.  It was brought to our

18   attention three weeks -- this shouldn't be trial by

19   ambush, which is precisely what it was.  In fact, two

20   days ago, we learned that --

21          THE COURT:  Do you have an expert to respond to

22   Ms. Stamm in the first place?

23          MS. BLAUNER:  On the other opinions?

24          THE COURT:  Yes.

25          MS. BLAUNER:  Yes.  Not on these opinions.  This

1   has to do with medallion values.  I mean, this is a

2   completely different subject matter than the opinions

3   that were previously offered.  So our expert is an

4   expert on causation and analysis and unfair

5   competition, but the issue of medallion values and

6   whether they were inflated was never an issue in this

7   case, and so there was no reason to go out and hire an

8   expert on predatory practices, which appears to be what

9   they're trying to argue.

10        In fact, three days ago, they subpoenaed 2,000

11  documents from the City of Boston on this.  How are we

12  supposed to respond to this two days before trial?  I

13  mean, this is just unfair ambush by the Defendants, and

14  it shouldn't be allowed.

15        THE COURT:  Well, that's a separate issue, is it

16  not?  We're talking about Ms. Stamm and whether or not

17  you want to take her deposition; right?  We're not

18  talking about these documents.

19        MS. BLAUNER:  Well, but our assumption is

20  they're going to try to use these documents now for

21  some other purpose because it all relates to medallion

22  sales.  And so, you know, every day we're getting new

23  stuff from them relating to this new theory.  Like I

24  said, they got new documents from the City relating to

25  this new theory.  This is trial by ambush, and it

1    really shouldn't be allowed.

2              THE COURT:  Mr. Gershenson?

3              MR. GERSHENSON:  Your Honor, it's certainly not

4    trial by ambush.  Under Rule 703, first of all, we can

5    rely, reasonably rely on the articles.  Under Rule

6    803A(18), it specifically says, "A witness can address

7    statements from a periodical and especially a reliable

8    periodical."

9              Now, the Plaintiffs knew about this loose

10   lending from the beginning.  First of all, they're

11   involved in it.  Ed Tutunjian is giving sub-prime

12   loans, and that's why they're fighting so hard.  They

13   are expanding the market, they are inflating the

14   values.  She says medallion values is a new issue, and

15   it's clearly not.  That is their entire case, that

16   theoretically the medallion values should have been up

17   here, and the problem with that theory is the starting

18   point is false, and the end point is false.

19             Their theory is medallion values would have gone

20   to a million dollars in Boston as of the TNC Act.  It's

21   just not true, and we have every right to present our

22   reliable theory and to confront their unreliable

23   theory.

24             THE COURT:  All right.  I'll take the matter

25   under further advisement, but I do offer the Plaintiffs

1     the right to take a deposition of this person, and,

2     obviously, it would make most sense during the hiatus

3     period after the first three days of trial but before

4     the last three.  And if this person needs to be taken

5     out of order because of that, that will be done.

6             MS. BLAUNER:  And, Your Honor, we will confer

7     about that possibility.  Will they be ordered to show

8     up in Boston for the depositions?  We can't be

9     traveling to California and to wherever Ms. Stamm is --

10            THE COURT:  Yes.

11            MS. BLAUNER:  -- in the middle of trial.

12            THE COURT:  If she's going to be here, the

13    deposition should be in Boston.

14            MR. GERSHENSON:  Understood, Your Honor.

15            THE COURT:  Okay.  All right.  Anything further

16    with respect to my rulings on the pending motions?

17            If not, we'll turn to the miscellaneous matters

18    that have come up, in no particular order, but the

19    Plaintiffs have proposed -- in their proposed agenda,

20    575, have proposed certain questions that the Court

21    will provide -- now provide answers.  The Court has no

22    preference on opening statements.  Of course, because

23    there are time limitations, you can use your time in

24    any way you want, either side.  It's going to be up to

25    you because you are constrained by these time

1    limitations.  You're free to choose how you present

2    your case, and so long as you stay within the time

3    constraints imposed, the Court does not have any say on

4    how you do that.

5         The Court prefers live testimony to deposition

6    testimony of course, but to the extent that parties

7    agree on deposition testimony being presented, the

8    Court will hear it.  If deposition testimony is

9    necessary, the Court prefers video testimony with the

10   appropriate portions redacted, as agreed upon by the

11   parties.

12        If video depositions are not possible, the Court

13   will require the parties to designate an individual to

14   read the witness's answers, unless the designated

15   portions are very short.  This is just -- obviously, it

16   makes a lot more sense to have somebody on the stand

17   answering on behalf of the deponent rather than have a

18   lawyer stand up and read, "Question, answer, question,

19   answer."  That can get pretty monotonous.

20        If the Court denies the Defendants' motion for

21   directed verdict, the Plaintiffs will be allowed to

22   present rebuttal evidence, again, subject to the

23   Court's time limitations.  The parties are free to

24   decide whether they will call the same witness twice.

25   If it makes more sense to have the witness present

1    testimony on two separate occasions, I have no problem

2    with that.

3         With respect to factual statements made in the

4    Court's summary judgment memorandum and order, the

5    Court does not consider them binding if Uber presents

6    evidence that creates a good-faith dispute as to those

7    factual findings.

8         With respect to the Plaintiffs' objections to

9    Defendants' late-disclosed witnesses, Plaintiffs may

10   depose each such witness for up to one hour before

11   trial, and the Defendants will be required to pay for

12   daily copy.

13        Finally, the Court will not, at this time,

14   address the admissibility of categories of documents,

15   assuming that the Defendants object to certain

16   categories.  If the Court is required to rule on

17   admissibility, it will do so, but the parties are

18   reminded that the losing party, or both parties will be

19   charged for the time it takes the Court to so resolve

20   those problems.

21        Any comments with respect to the Plaintiffs'

22   proposed agenda?

23        Ms. Blauner?

24        MS. BLAUNER:  Yes, I have a question.  With

25   respect to the late-disclosed witnesses, I mean, they

1    have a list, you know, that's ten, 12 witnesses long.

2    I think that we need to understand which ones they're

3    actually planning on calling to make a decision as to

4    whether we want to depose the late-disclosed witnesses.

5         THE COURT:  Which particular witnesses are you

6    referring to?

7         MS. BLAUNER:  Well, there are -- I mean, I think

8    there are at least eight or nine witnesses on the --

9         THE COURT:  Have those witnesses been made

10   available for depositions before trial?

11        MS. BLAUNER:  No, we never -- I mean, they

12   weren't on their initial disclosure.  There's

13   Robert Ciccolo, Emami, Koh, Linehan, Flaherty, Osgood,

14   Mayor Walsh, and then they just recently added

15   Chris English, and so we don't know -- I mean, to take

16   ten depositions --

17        THE COURT:  All right.  I will ask the

18   Defendants.  Which of those witnesses are going to be

19   called, and why shouldn't they be made available for

20   their depositions in the meantime?

21        MR. SHEETZ:  Your Honor, none of these witnesses

22   are Uber employees.  We don't control any of them.

23   They're all City officials, for the most part, who have

24   been -- almost exclusively who have been mentioned and

25   are in documents that have been discovered throughout

1       the case.  At any time, either side could have chosen

2       to allocate some of their deposition time to depose any

3       of these witnesses, us or the Plaintiffs, and neither

4       side chose to do so.

5            So I don't control them.  We're in -- we have an

6       agreement, after discussion with counsel, that we're

7       going to disclose witnesses who are going to appear on,

8       you know, Trial Day 1, call it, 48 hours in advance.

9       And, you know, I think each side is entitled to rely

10      on, especially given Your Honor's hours limitation, on

11      a good-faith disclosure of those witnesses, and we

12      intend to, obviously, abide by that.

13           THE COURT:  All right.  Ms. Blauner?

14           MS. BLAUNER:  Your Honor, the issue is that they

15      have eight or nine witnesses who were late-disclosed.

16      They weren't in their automatic disclosures, and that

17      was the requirement.  And so for us -- and Your Honor

18      has given us the opportunity now to depose some of

19      these witnesses, if we choose, but to depose eight

20      witnesses when only one or two might be called is

21      really a waste of time, and we really shouldn't be put

22      to the burden of taking eight depositions of witnesses

23      who may or may not be called.  So I think we're

24      entitled to, at this point in time, know which one of

25      these late-disclosed witnesses they intend to call.

1          THE COURT:  All right.  Well, I will direct the

2    Defendants to inform Plaintiffs' counsel as to which of

3    those witnesses that she mentioned, those ten or 12

4    names, will be called at least during this first

5    three-day part of the trial.  That's tomorrow, Friday

6    and next Monday.

7          MR. SHEETZ:  Of course, Your Honor.

8          THE COURT:  Disclose it to them forthwith, and

9    if there are more than one or two and the depositions

10   are going to be difficult to arrange between now and

11   the time that they're going to testify, then we'll have

12   another problem.  But assume this is something that

13   counsel could work out.

14         MR. SHEETZ:  Yes, Your Honor.

15         THE COURT:  Mr. Haber?

16         MR. HABER:  Yes, Your Honor.  I don't want to

17   play ping-pong on this issue, but with respect, I think

18   the solution that Your Honor has thus far ordered

19   really prejudices the Plaintiffs; all right?  The

20   reason for automatic disclosures, as you full well

21   know, is so that the parties know well in advance, you

22   know, what witnesses, fact witnesses, are potentially

23   at issue in the case so the parties can decide what

24   discovery to do with respect to those witnesses.  These

25   witnesses were first disclosed a month and a half

1    ago -- all right? -- in the pretrial, you know,

2    memorandum; all right?  We never knew that they were

3    planning to call these witnesses.

4         Now, especially given the trial schedule that

5    Your Honor has indicated, to put us in the position of

6    needing to conduct fact depositions in the middle of

7    trial preparation, in the middle of our preparation of

8    our witnesses and preparing to cross-examine their

9    witnesses, for us to now be going back to fact

10   deposition discovery is really prejudicial and unfair.

11        They offered no excuse for not having properly

12   notified under the Federal Rules, so that, again, that

13   this is not trial by ambush.  These witnesses should

14   not have been disclosed this late.  They should simply

15   not be allowed to testify.  And, by the way,

16   Your Honor, to have them tell us who they're going to

17   call in the first three days of trial doesn't help us

18   at all.  That's our case.  We're going to be calling

19   witnesses during the first three days of trial, and

20   so -- and for us to have to be doing fact depositions

21   in the middle of this trial is just unfair, and it's

22   particularly unfair because they caused it by simply

23   not giving proper notice of these witnesses.

24        THE COURT:  All right.  Let me hear again from

25   Mr. Sheetz.

1      MR. SHEETZ:  Yes.  Thank you, Your Honor.

2      I can make this a little easier, I think.  First

3  of all, none of the witnesses are going to be called

4  during the first three days of trial, number one.

5      Number two, I don't think we need to get -- to

6  debate our own characterization of late called versus

7  everybody knew all along.  I mean, we have one

8  position, they have another position.  But I think it's

9  reasonable for us to cull the list and to identify for

10  the Plaintiffs during that interim period, you know,

11  the week that we have -- again, we don't control these

12  witnesses -- whether we expect to call any of those

13  folks in the next -- the last three days of the trial,

14  and we will seasonably do that.  I don't really

15  think -- I don't really think -- I think Your Honor's

16  solution is reasonable, and I don't think -- I think,

17  you know, we can accommodate that.

18      THE COURT:  Well, all right.  I want you to

19  inform the Plaintiffs today which of those 12 witnesses

20  will be called in the second tier of the trial; that

21  is, the second week, giving them at least one week

22  between their first three days and your three days.

23      MR. SHEETZ:  Yes, Your Honor.

24      THE COURT:  And then I will hear from the

25  Plaintiffs as to why -- if they believe still they have

1    been prejudiced by their failure to have been notified

2    earlier, I will hear them tomorrow as to why I should

3    not allow the Defendants to call those witnesses.

4         But this is the kind of thing that ought to be

5    worked out, Counsel.  You've got very well-established

6    and well-personed law firms involved in this case, and

7    this ought to be something that could be resolved

8    amongst counsel.  But at the very least, Mr. Sheetz,

9    you will inform Mr. Haber and his colleagues of exactly

10   who it is among those ten or 12 names that Ms. Blauner

11   mentioned and make them available for depositions

12   during the week that we're not going to be in session,

13   and then if there is still a problem from the

14   Plaintiffs' side, I'll hear Plaintiffs tomorrow.  All

15   right?

16        MR. SHEETZ:  Thank you, Your Honor.  Just on the

17   one piece about "make available," we don't control any

18   of these witnesses, but, obviously, we'll cooperate to

19   the extent we're able to do so.

20        THE COURT:  Yes, that's what I mean.

21        MR. SHEETZ:  Yes, Your Honor.

22        MR. GERSHENSON:  Your Honor, if I may, very

23   quickly on this point, we would just request reciprocal

24   treatment on the bankers.  They've got ten of them as

25   fact witnesses.  None of them had anything to do with

1    these Plaintiffs during the relevant period, and so,

2    you know, there would have been no cause to depose them

3    all.  In the case of 800 Plaintiffs, 150 hours, as you

4    noted earlier, we would just like to know who they are.

5    They've been talking to them, they've been shopping,

6    they've been subpoenaing some, not others, but they're

7    playing blind man's bluff with us, refusing to tell us

8    who and when, as if we have to prepare for all ten.

9              THE COURT:  Ms. Blauner?

10             MS. BLAUNER:  Your Honor, all of those witnesses

11   were properly disclosed on our automatic disclosure.

12   That's the difference.  They've known about them from a

13   year ago.  We complied with our obligations on

14   automatic disclosure as to what these witnesses were

15   going to testify to.  Their documents were subpoenaed

16   in this case.  So this isn't a case of surprise.

17             As for who we're going to call, we have put our

18   expected -- who they are on our expected witness list,

19   they know who they are, and pursuant to our agreement

20   with them, we will notify them 48 hours in advance as

21   to which one of the witnesses will be called on which

22   day.

23             THE COURT:  All right.  And of course 48 hours

24   now means tomorrow and Friday would be due now.

25             MS. BLAUNER:  We've already disclosed those

1    witnesses --

2              THE COURT:  Okay.

3              MS. BLAUNER:  -- and on Friday, we'll disclose

4    who we will be calling on Monday.

5              MR. GERSHENSON:  That's fine, Your Honor, if

6    they're sticking with who they expect to call, and if

7    we have a chance to depose them during that week, that

8    would be fine.

9              MS. BLAUNER:  Your Honor --

10             THE COURT:  No.  They're going to be testifying

11   tomorrow or Friday.

12             MR. GERSHENSON:  No.  I believe that's

13   incorrect.  She can correct the record, but my

14   understanding is they are not scheduled to testify, and

15   so there would be ample time, Your Honor, during the

16   break.

17             MS. BLAUNER:  Your Honor, these witnesses were

18   disclosed by us in June of 2018.  They had --

19             THE COURT:  Yeah.  I'm not going to require the

20   Plaintiffs to make them available.  They were known to

21   you before.  If you wanted to take their depositions,

22   you could have.

23             MR. GERSHENSON:  Okay, understood, Your Honor.

24             MR. SHEETZ:  Thank you, Your Honor.

25             THE COURT:  Anything else in terms of logistics

1    or at least that relate to those miscellaneous matters?

2          I have one more matter to deal with.

3          MR. HABER:  Could I have one moment, Your Honor?

4          THE COURT:  Yes, Mr. Haber.

5          MR. HABER:  If I could just consult with

6    Mr. Sheetz for a second?

7          THE COURT:  Yes, you may.  Yes.

8          MR. HABER:  Thank you, Your Honor.

9          (Pause)

10         MR. SHEETZ:  At least we're conferring with each

11   other.

12         THE COURT:  That's always good.

13         MR. HABER:  Your Honor, as you just saw, I was

14   consulting with defense counsel, and both sides are

15   divergent, so to speak.  We respectfully request that

16   we need something more in the way of time to adequately

17   try the case, and we would like Your Honor to consider

18   giving us, instead of the six trial days that you

19   indicated, a total of eight trial days, which would

20   give each side approximately 16 or 17 hours to put in

21   their -- each of their cases.

22         THE COURT:  Why do you need it?

23         MR. HABER:  When we have --

24         THE COURT:  We very dramatically reduced the

25   issues involved in this case.  In the summary judgment

1    order that I entered, I informed counsel of the issues

2    that I want to hear about.  Why can't we do that in 24

3    hours of trial time?  That's a long time.

4            MR. HABER:  I'm not by any means saying that

5    that wouldn't be a significant length of trial,

6    Your Honor.  I can say for the Plaintiffs we have spent

7    a lot of careful time reviewing who we will call as

8    witnesses.  We're currently planning in our

9    case-in-chief, as opposed to any rebuttal, we're

10   planning to call only eight witnesses, some who will be

11   lengthy, some who will be relatively brief.

12           We could also, as Your Honor indicated, which is

13   appropriate, we're going to -- whatever amount of time

14   Your Honor gives us to put in our case, we're going to

15   have to reserve time, obviously, not only to

16   cross-examine their witnesses but potentially to put in

17   rebuttal witnesses on the affirmative defenses that

18   Uber has proffered, if you don't direct a verdict

19   against those at the close of their case.

20           So, in planning, we have to reserve some time

21   for that because we don't know.  And I will simply tell

22   you that we have full recognition of the fact that you

23   are fully familiar with a great deal of this case.

24   We're not going to waste your time, we're not going to

25   tread ground that has already been plowed, so to speak,

1    but we really do think we need more than the amount of

2    time you've offered.

3        THE COURT:  All right.  Mr. Sheetz?

4        MR. SHEETZ:  Your Honor, I actually agree with

5    what Mr. Haber said.  We have carefully mapped out what

6    we expect our witnesses to -- the time we expect our

7    witnesses to take.  That is longer than the 12, and

8    it's longer than the 16, but obviously you deal with

9    what you can do.

10        We also think Your Honor will, in terms of our

11    own personal allocation of time, would benefit -- the

12    Court would benefit from hearing an opening, which

13    obviously takes time off of the allocated time, and we

14    believe that 16 hours would be a reasonable amount of

15    time for both parties to put their case in and

16    respectfully request that you do so.

17        THE COURT:  All right.  Counsel, I will consider

18    this overnight and let you know tomorrow before we

19    start what my ruling is.  But I will reconsider the

20    matter.

21        I have one other issue with respect to Docket

22    No. 576; that is, Defendants' motion for

23    reconsideration of the Court's ruling on the so-called

24    Section 3 defense.  Upon reviewing the motion to

25    reconsider the Court's ruling on the Section 3 defense,

1   the Court understands that the exhibits Uber cites but

2   has not yet produced because of apparently a technical

3   difficulty were not presented at the summary judgment

4   stage and that, although Uber has presented its motion

5   as one for reconsideration, it seems to relate to new

6   facts discovered but not argued earlier.  That being

7   said, the Court will not restrict Uber from presenting

8   such evidence at trial because it is relevant to Uber's

9   good-faith defense.

10          Finally, with respect to Docket No. 580, that's

11  the Defendants' request for judicial notice, the Court

12  received the subject exhibits for judicial notice just

13  this morning and, therefore, will take the matter under

14  advisement.  It has not had an opportunity to review

15  that yet.

16          Is there anything further that needs to come to

17  the Court's attention?

18          MR. HABER:  Just, Your Honor, with respect --

19          THE COURT:  Mr. Haber?

20          MR. HABER:  With respect to that last matter,

21  when would Your Honor like us to submit our response to

22  that?  Obviously, it just came in yesterday promptly,

23  but we obviously would want the opportunity to do that

24  before you would rule on it.

25          THE COURT:  Yes.

1          MR. HABER:  Can we get that to you by Friday?

2     Their case doesn't start until sometime next week at

3     the earliest anyway.

4          MS. DUNN:  Our case starts tomorrow with our

5     cross or really direct of your first witness.

6          THE COURT:  Just to inform Counsel, you address

7     the Court, not each other, in this Courtroom.

8          MS. DUNN:  My apologies, Your Honor.

9          So, Plaintiffs are calling adversely an Uber

10    employee, former Uber employee, so technically our case

11    does start tomorrow when we need to put on her direct

12    examination following Plaintiffs' cross-examination.

13         THE COURT:  Mr. Haber?

14         MR. HABER:  Well, I understand what is said.

15    Nevertheless, we still would like the opportunity to

16    be -- you know, to respond.  Can we respond to the

17    judicial notice motion by the end of today?

18         THE COURT:  Yes --

19         MR. HABER:  Thank you, Your Honor.

20         THE COURT:  -- you can do that.

21         MS. DUNN:  Thank you.

22         MR. HABER:  And something just got raised in

23    that colloquy that I wanted to clarify, Your Honor.

24    The witness that my sister was referring to who is

25    going to be our first witness tomorrow is

1   Ms. Meghan Joyce who was the general manager of Uber's

2   operations in Boston during a good part of the unlawful

3   conduct period, and she's -- I think she is no longer

4   an employee of Uber, but she was for a very long time.

5   She was a cooperating witness with Uber, was

6   represented by them at her deposition, prepared by her

7   deposition, and we assume and would like clarification

8   that we can treat her as an adverse witness.

9           THE COURT:  Yes, you may treat her as an adverse

10  witness.

11          MR. HABER:  Thank you.

12          THE COURT:  And that reminds me that I need to

13  have you tell me, Mr. Haber, who you expect to call

14  tomorrow and approximately what the length of his or

15  her direct examination will be, and then we'll get to

16  the Defendants.

17          MR. HABER:  As I indicated, our first witness

18  will be Ms. Joyce.

19          THE COURT:  And her direct will be approximately

20  how long?

21          MR. HABER:  Somewhere between an hour and a half

22  and two hours.

23          THE COURT:  Okay.

24          MR. HABER:  And, obviously, I don't know how

25  long the Defendants will inquire.

1        And our second witness will be a gentleman named

2    Jason Hoyt --

3        MS. BLAUNER:  No.  Robert Hoyt.

4        MR. HABER:  Robert Hoyt.  I'm sorry.

5    Robert Hoyt.

6        THE COURT:  H-o-y-t?

7        MR. HABER:  Correct.  And he is also a former

8    employee of Uber.  And, again, we would want leave to

9    treat him as an adverse witness.

10       THE COURT:  Yes.  And his approximate direct?

11       MR. HABER:  Somewhere between -- approximately,

12   between a half hour and 45 minutes.

13       THE COURT:  All right.  Let me stop you there

14   and ask defense counsel, Ms. Dunn or Mr. Sheetz, the

15   approximate cross-examination, which I understand will

16   be the equivalent of direct examination.  You will not

17   be allowed to lead your own witness.

18       MS. DUNN:  Yes, Your Honor, we understand.

19   Ms. Joyce's examination we anticipate will be about an

20   hour and a half to two hours, similar to what

21   Plaintiffs intend to use.

22       And Mr. Hoyt we would anticipate would be in the

23   neighborhood of a half an hour.

24       THE COURT:  Okay.  So it may be that those are

25   the only two witnesses we will hear, if we get through

1    them.

2           Who would be the next witness, if we get through

3    Mr. Hoyt?

4           MR. HABER:  The next witness that we're planning

5    would be a Lieutenant Thomas Lema.  Well, it depends on

6    whether it's Friday or Thursday -- okay? -- in terms of

7    how much time this takes; all right?  If we're done

8    with Mr. Hoyt tomorrow, which I frankly don't expect,

9    but if we're done with him, then we would be putting in

10   the video deposition of --

11          MS. BLAUNER:  No.

12          MR. HABER:  Yeah.

13          MS. BLAUNER:  Maybe.

14          MR. HABER:  -- then we would be putting in --

15   excuse me -- a video deposition of another former Uber

16   employee who was a 30(b)(6) designee of Uber,

17   Jason Holt.

18          THE COURT:  Jason --

19          MR. HABER:  Holt, H-o-l-t.

20          THE COURT:  H-o-l-t.

21          MR. HABER:  If there's still time tomorrow.

22          THE COURT:  And his video deposition is

23   approximately how long?

24          MS. BLAUNER:  It's going to be cut down tonight.

25          MR. HABER:  Shorter than it was, sir.

          THE COURT:  I'm asking for the cut-down version.

    How long?

          MS. BLAUNER:  Yeah.  I don't know.  We have to

    go back -- I'm hoping 45 minutes, no more than that,

    probably less.

          THE COURT:  And does that include both direct

    and cross?

          MS. BLAUNER:  Right now, the video's 90 minutes.

    I'm hoping to cut it in half.

          MS. DUNN:  We would expect to include our

    counters to whatever Plaintiffs put forward in their

    deposition.

          THE COURT:  Okay.  So that's something that you

    ought to plan on doing now so that we don't have to

    take time during the course of the trial days.  But at

    least tomorrow's docket or agenda is clear, it's going

    to be Joyce, Hoyt and possibly the video deposition of

    Holt --

          MR. HABER:  Correct, Your Honor.

          THE COURT:  -- right?  Okay.

          MR. SHEETZ:  Your Honor, we've had -- as I said,

    we've made an arrangement that we'd inform each other

    48 hours in advance of who we're going to call as

    witnesses.  That includes -- so the deadline for Friday

    has already passed.  They informed us that they

1    intended to call Lieutenant Lema and Ms. Tarpy on

2    Friday.

3         In light of the Court's schedule, I would first

4    ask openly if they are certain that they're going to

5    get through only those two and an understanding that

6    they bear the burden of disclosure.  In other words,

7    you know, if they haven't disclosed an extra witness

8    who doesn't go, well, that's the way it goes.  But we

9    obviously don't want a gap or surprises that are

10   unfair.

11        THE COURT:  No, I don't want a gap, and that's

12   why I'm asking.  And perhaps it would be appropriate

13   under these circumstances, since this is a bench trial,

14   to give me your rough estimate right now, Mr. Haber, of

15   what's going to happen Friday.

16        MR. HABER:  Well, okay.  Obviously, how much

17   time we have on Friday depends on how much we've

18   accomplished on Thursday of course.

19        THE COURT:  Yes, I understand that.

20        MR. HABER:  And what my best

21   estimate/guesstimate is, is that we will -- especially

22   if there are openings, and it's my understanding --

23   they can speak for themselves -- that they're planning

24   to do a lengthy opening.  If I do an opening, it'll be

25   a short one.  But my best estimate is, is that we will

1    be fortunate time-wise if we finish with Ms. Joyce

2    tomorrow and we have started with Mr. Hoyt.  That's my

3    estimate.

4            And, hence, we're going to be finishing with

5    Hoyt on Friday, we will then have the Holt video at

6    some point.  We can -- especially since this is a bench

7    trial, we can use that time as a filler when we're

8    juggling witness availability.  And we have -- you

9    know, Lieutenant Lema is an active member of the Police

10   Department.  We have asked --

11           THE COURT:  How do you spell his last name?

12           MR. HABER:  Oh, L-e-m-a.  Thomas.

13           THE COURT:  L-e-m-a.  Mr. Lema?

14           MR. HABER:  Yes.  And then we have asked -- we

15   have arranged for him to be present on Friday, and I do

16   not think --

17           THE COURT:  And his direct examination will be

18   approximately how long?

19           MR. HABER:  I think my examination of him won't

20   be more than 30-plus minutes.

21           THE COURT:  Okay.  And the cross, approximately?

22           MR. SHEETZ:  30 minutes, Your Honor.

23           THE COURT:  And after Lieutenant Lema?

24           MR. HABER:  Mary Tarpy, who is the President of

25   the Plaintiffs.

1      THE COURT:  And her direct?

2      MR. HABER:  Half hour, 45 minutes.

3      THE COURT:  And the cross?

4      MR. SHEETZ:  75 minutes, Your Honor.

5      THE COURT:  Okay.  And after Ms. Tarpy?

6      MR. HABER:  After Ms. Tarpy, we would be

7  juggling availability of witnesses, and it would either

8  be William McKenzie, one of the bankers that you've

9  heard about, or it would be John Weeden.

10      THE COURT:  I'm sorry?

11      MR. HABER:  John Weeden, W-e-e-d-e-n.

12      THE COURT:  Yes.  And the length of their

13  respective directs?

14      MR. HABER:  Of McKenzie -- I'm pointing to

15  Mr. McLoughlin, since he's in charge of that.

16      MR. McLOUGHLIN:  About a half hour to

17  45 minutes, Your Honor.

18      THE COURT:  For each?

19      MR. McLOUGHLIN:  No.  Just for Mr. McKenzie.

20      THE COURT:  Mr. McKenzie would be 45.  And

21  Mr. Weeden, if it's him?

22      MS. BLAUNER:  Approximately 90 minutes.

23      THE COURT:  90.

24      And the cross examinations of those two?

25      MR. SHEETZ:  Your Honor, Mr. McKenzie,

1    30 minutes; Mr. Weeden, probably one hour, yeah,

2    60 minutes.

3        THE COURT:  Okay.  Now, I haven't been adding as

4    we go along, but that seems to me approximately it

5    would take us through Friday; am I right?

6        MR. HABER:  I think, if we're done with all of

7    that by Friday, we can all give ourselves a gold timing

8    star.

9        THE COURT:  And I will give you a star too.

10       All right.  Anything else that needs to come to

11    the Court's attention before we adjourn for the day?

12       MR. SHEETZ:  Your Honor, there was an issue with

13    regard to sequestration.  We do have agreement that

14    fact witnesses are going to be sequestered, but my

15    brother suggested to me that he does not agree to the

16    standard practice of allowing expert witnesses,

17    specifically damages expert witnesses, to be in the

18    Courtroom at all times.  And I would ask Your Honor, I

19    find that highly unusual, and we believe that we need

20    to have our damages expert, our experts available in

21    the Courtroom to be able to comment on testimony and

22    obviously respond to what happens during the course of

23    the trial, and we consider that a very regular thing to

24    occur.

25       THE COURT:  Well, what's the objection to having

1 your opponent's expert sitting in the Courtroom?

2   MS. BLAUNER:  Your Honor, I think that's

3 appropriate, for them to sit there while our experts

4 are testifying but not -- there's no reason for them to

5 be able to sit there while the fact witnesses are

6 testifying.  I don't think they relied on any of the

7 testimony from the fact witnesses.

8   The other thing is, with respect to fact --

9   THE COURT:  What's the downside of allowing an

10 expert witness to sit in the trial?

11   MS. BLAUNER:  We don't have an objection.  And

12 with respect to --

13   THE COURT:  So there is no objection to the

14 expert witness of the Defendants sitting in the trial

15 during the course of the trial?

16   MS. BLAUNER:  Yes, we will --

17   THE COURT:  All right.

18   MS. BLAUNER:  And with respect to fact

19 witnesses, of course the Plaintiffs are entitled to

20 have their corporate representatives in the Courtroom

21 whether they're called as witnesses or not, the Rule is

22 quite clear, and so we plan to have our corporate

23 representatives in the Courtroom.

24   THE COURT:  By representatives, that's plural.

25 What do you mean?  How many?

1          MR. HABER:  Two, Your Honor.

2          MS. BLAUNER:  Two.

3          MR. HABER:  Ms. Tarpy, who I've mentioned

4     to you, we will be calling as a witness, and

5     Nancy Tutunjian who is the principal owner of all of

6     the Plaintiffs who we are not calling as a witness.

7          THE COURT:  All right.

8          MR. SHEETZ:  Well, Your Honor, this really is a

9     small housekeeping matter, I suppose, but in the

10     pretrial submission by the Plaintiffs, they are the

11     ones that recommended and suggested to the Court that

12     each side have one corporate representative.  I think

13     that is very standard, and I would just ask -- we

14     intend to designate one person, and I would ask that

15     the Plaintiffs do so as well, especially given the

16     materiality of the Tutunjian family, to have both of

17     the people who will testify in this trial in I think is

18     stretching it a little bit.

19          THE COURT:  Well, as I believe I understand, the

20     one designated is not going to be called as a witness.

21     There's only one --

22          MR. SHEETZ:  Not by them, Your Honor.

23          THE COURT:  There's only one corporate

24     representative that's going to testify; is that right?

25          MR. SHEETZ:  For the Plaintiffs, Your Honor, but

1    not in the trial.  We intend to call both of them.

2              THE COURT:  Well, how do you respond to that?

3              MR. HABER:  Your Honor, I think -- obviously,

4    trying to be practical, there are 34 Plaintiffs, but I

5    think that it's reasonable to ask the -- to have the

6    primary --

7              THE COURT:  I'm going to allow the Plaintiffs to

8    have their two representatives in the Courtroom.

9              MR. HABER:  Thank you.

10             MR. SHEETZ:  Thank you, Your Honor.

11             THE COURT:  Anything else that needs to come to

12   my attention?  Otherwise, I'll see you all tomorrow at

13   9:30.  We will start the trial at that time.

14             I will take under advisement the matters that

15   I've said.

16             (Adjourned, 12:15 p.m.)

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Debra D. Lajoie, RPR-FCRR-CRI-RMR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Debra D. Lajoie

7/17/19